**BLAKE CONSTRUCTION CO., INC., Plaintiff,**

v.

**INTERNATIONAL HARVESTER COMPANY, et al., Defendants.**

No. 81 C 2234.*

United States District Court, N. D. Illinois, E. D.

Sept. 1, 1981.

Lowell E. Sachnoff, Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., Gary L.

---

* This memorandum opinion and order also applies to related cases *National HMO Corporation v. International Harvester Company* ("Harvester"), *et al.*, 81 C 3062; *John Woods, et al. v. Harvester, et al.*, 81 C 3587; *Universal Tool and Manufacturing Corp. v. Harvester, et al.*, 81 C 3687 and *Fred Rosenberg, et al. v. Hayford, et al.*, 81 C 3995.

Specks, Specks & Goldberg, Chicago, Ill., for plaintiff.

John Hupper, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These are five of the seven class actions filed against Harvester, various of its directors and officers and Morgan Stanley & Co. Incorporated ("Morgan Stanley"). Two other actions are pending before Honorable Mary Johnson Lowe of the United States District Court for the Southern District of New York. Defendants have filed motions to transfer the five actions to that District Court under 28 U.S.C. § 1404(a). Plaintiffs in three of the actions oppose transfer vigorously, while plaintiffs' counsel in the other two have apparently changed their views as to the most convenient forum since they filed their actions and now join with defendants. For the reasons stated in this memorandum opinion and order the motion to transfer is granted.

### Background Facts

All seven actions arise out of Harvester's issuance of 3 million shares of $5.76 Cumulative Convertible Preferred Stock, Series C pursuant to a Registration Statement effective October 16, 1980 and a Prospectus bearing the same date. Morgan Stanley was managing underwriter for the issue. All five complaints in this District and the *Weinberger* case in the Southern District of New York (the earliest-filed of the seven cases) have been brought on behalf of holders of Series C Preferred Stock. They rely principally though not exclusively on Section 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77k. All Harvester security holders other than those holding the new Preferred Stock issue are the designated class in the *Darvin* case, the other action pending in the Southern District of New York (asserting claims under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 thereunder).

Counsel for all defendants and for plaintiffs in the New York cases and two of the cases here have reached an agreement, embodied in a stipulation since approved by Judge Lowe, for some important and constructive procedural arrangements to expedite handling of the cases. Under that stipulation, if the two Illinois cases were transferred to the Southern District of New York:

(1) Both the transferred cases and *Weinberger* would be consolidated for all purposes, with a consolidated complaint to be filed.

(2) Defendants would then answer the consolidated complaint rather than filing any pleading motion, reserving however their rights to file any motions following "substantial discovery including depositions" in the consolidated actions.

(3) Defendants would agree to a stipulated class of purchasers of Series C Preferred Stock as to claims asserted under Section 11 of the 1933 Act.

(4) Discovery in *Darvin* would be consolidated and coordinated to the extent possible with discovery in the other three actions.

(5) Prompt efforts would be made to negotiate a confidentiality stipulation and a schedule for consolidated and coordinated discovery.

(6) To implement the other understandings defendants have agreed to produce copies of documents in the Southern District of New York. Harvester has also agreed to produce its principal officers and its employee directors (the "inside directors") for depositions in the Southern District of New York, except in the case of substantial unforeseen inconvenience. At plaintiffs' request Harvester would also produce for trial any witnesses then subject to its control and who would then be subject to the subpoena power of this Court.

(7) If the other Illinois cases were transferred to the Southern District of New York, the parties would promptly move to consolidate those cases

with the previously consolidated cases.

When this Court was first apprised of the prospect of such an agreement at its July 6, 1981 status hearing, it indicated its view that no such agreement could appropriately be limited in terms of the forum before which the actions were pending, and that it would expect every provision of any such agreement that could be implemented in this District to be adhered to if the cases were not in fact transferred. At the most recent status conference August 20, 1981 all counsel confirmed that such would be the case.[1] Morgan Stanley's counsel made it clear however (as was their right) that their client would not agree to the mirror image (in terms of Illinois production) of Harvester's commitments described in Paragraph 6 of the stipulation (Harvester's own commitments would of course become moot if the cases were retained here).

### General Considerations Relating to Transfer

■ In another era, when Clarence Venner was a household name among members of the corporate bar, it was popular to charac-

terize stockholders' derivative actions with the pejorative label of "strike suits."[2] Passage of time and increased sophistication have not changed the locution, though now the target has expanded to cover the class as well as the derivative action. Thus the class action—especially the securities class action—inspires extremes of reaction: It is viewed by its advocates as the major legal vehicle for enforcing corporate honesty and by its detractors as the major legal vehicle for enriching plaintiffs' lawyers.[3]

Little wonder then that courts with substantial exposure to securities class actions (whether as practicing lawyers or since taking the bench) find their antennae vibrating when they encounter either of two opposite phenomena:

(1) what appear to be inordinately burdensome discovery requests by plaintiffs (in hopes of stimulating an early settlement proposal, rewarding counsel before they have had to invest large blocks of time) or the corresponding Stalingrad defense by defendants (intended to exhaust the opposition and their more limited resources, in turn leading to acceptance of a modest settlement offer); or

1. In light of that agreement the Court finds singularly unpersuasive the concluding portion of the memorandum filed by counsel for plaintiff National HMO Corporation in support of the motion to transfer. Though the Court does not minimize the results reflected in the stipulation, it is of course irrelevant that the agreements related to the first four filed actions. All the significant benefits of the stipulation would be available whichever of the two courts retained these actions.

2. Black's Law Dictionary defines a strike suit as:
   Shareholder derivative action begun with hope of winning large attorney fees or private settlements, and with no intention of benefiting corporation on behalf of which suit is theoretically brought.

3. It is of course equally conventional wisdom to view Fed.R.Civ.P. 23(e) as the rulemakers' response to potential abuse of the class action. As Professor Arthur Miller of Harvard Law School put in in *An Overview of Federal Class Actions: Past, Present and Future*, 4 Justice System J. 197, 214–215:

Underlying Rule 23(e) is the same philosophy we discussed in connection with adequacy of representation: the settlement of a class action will affect many, many people who are not actually before the court. They are involved in the action only by representation, and deserve the best possible protection. Accordingly, the district judge has an obligation to supervise and approve the propriety of a settlement in order to make certain that the self-appointed representatives have not simply become weak of heart, or have been bought off, or have entered into a sweetheart deal with the defendant, or their attorneys have made a covert arrangement with opposing counsel.

None of the several plaintiffs' counsel urging retention of the actions by this Court has stated that concern in so many words, though they have hinted at it by their references to "the real issue underlying this motion to transfer" and by asking "why defendants would go to such extremes to move the forum to New York when it is obviously more convenient for most witnesses and parties to proceed here." As indicated by this opinion, this Court shares those important concerns.

(2) opposing counsels' early arrival at procedural and substantive agreements that obviate many of the regular sticking points in these proceedings—class certification, avoidance of procedural motions, production of witnesses on the other party's home grounds and others.

At the same time courts must recognize that such suspicions can make it very difficult for counsel who are really doing their jobs properly—in the first example, merely representing their clients vigorously, and in the second, taking heed of courts' admonitions that lawyers have a responsibility to the justice system to expedite the handling and to minimize the costs of litigation.

This Court is knowledgeable of at least some of plaintiffs' counsel who seek to retain these cases in this forum. They are experienced and aggressive advocates who can be expected to represent the interests of the class ably and vigorously. It does not have corresponding knowledge of their opposite numbers in New York. It cannot however permit its puzzlement, or its concerns as to *why* Chicago-based Harvester should embrace with such alacrity an apparently more burdensome and more expensive defense in New York, to enter the scales in the balancing process required by Section 1404(a).[4] With the transfer now ordered by this Court, the responsibility for assuring the avoidance of the pitfalls identified by Professor Miller rests in the able hands of Judge Lowe.

### Application of Section 1404(a) [5]

On the merits of defendants' Section 1404(a) motion the parties have favored the Court with extended discussions as to the reasons for retention of these actions on the one hand and transfer on the other. It would conceivably be possible for a court rationally to justify either result "[f]or the convenience of parties and witnesses, in the interest of justice...." Perhaps the best

litmus paper test for this Court is that, despite an initial predilection for retaining these cases on those grounds, it has ultimately concluded that the statutory criteria are in fact better served by granting the transfer.

Perhaps because it stems from *forum non conveniens*—pre-Section 1404(a)—days, none of the parties has referred in terms to the statement in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) as to the factors to be considered. They are still useful benchmarks against which to analyze transfer motions:

(1) relative ease of access to sources of proof;

(2) availability of compulsory process for attendance of unwilling witnesses;

(3) cost of obtaining attendance of willing witnesses;

(4) "all other practical problems that make trial of a case easy, expeditious and inexpensive";

(5) relative congestion of the court dockets and prospects for earlier trial; and

(6) "a local interest in having localized controversies decided at home."

To touch on the last factor first, national securities class actions are not "localized controversies" in any real sense of the term. Simply to state the other factors confirms that, in light of the stipulation reached by the parties, New York does appear to be the more convenient forum. Only a few specific comments bear making in connection with the weighing process:

(1) Unlike the usual case, in which substantial weight is to be given to the plaintiff's choice of forum (*Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843), little rests on the choice by a plaintiff representative of a

---

**4.** As already indicated, it is difficult to retain a wholly unjaundiced view as to why *plaintiffs* in actions originally filed in this District should demonstrate the same alacrity.

**5.** One condition to transfer under Section 1404(a) is that the action "might have been brought" in the transferee district. No dispute on that score exists as to the Southern District of New York.

nationwide class. *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470, 472 (N.D.Ill.1979). That principle would not of course apply where adequate class representation is not available in the more convenient forum, but it does where as here *either* location will on the face of matters give the class the requisite protection. It should parenthetically be observed that this analysis does *not* put a premium on the race to the courthouse, because it is not a function of who has sued first and where. This Court gives no weight to that factor here and believes that the preference for the first-filed action expressed in *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (cited by defendants) should not be considered in the class action context.

(2) This Court has commented during the status hearings that "convenience of counsel" is *not* one of the factors embodied in Section 1404(a). Defendants' mere retention of New York counsel to defend the first-filed New York actions cannot be taken into account without indirectly embracing the race-to-the-courthouse approach. But it cannot be gainsaid that Harvester's choice of the same counsel who prepared the Prospectus under attack—the Cravath firm—may well serve "the convenience of [Harvester as one of] the parties."

(3) As principal underwriter Morgan Stanley is a critical defendant in each of the actions. It is headquartered in the Southern District of New York, and all its employees involved in the offering are based there. It has not entered into an agreement for Illinois discovery corresponding to Harvester's agreement under the stipulation for New York discovery. This Court could not properly compel it to do so. Taking this consideration into account is not a matter of the parties controlling the forum by agreement, which they cannot of course do under the law. It is rather a recognition of one element, and a very compelling one, in the balancing of conveniences. Because the lawsuits stem from Harvester's public offering, plaintiffs' counsel opposing transfer tend to treat these actions as Harvester-only litigation. But they themselves have appropriately joined Morgan Stanley as a defendant—and the statutory reference to "convenience of parties" must be read in terms of *all* the parties.

(4) There is a good deal to be said for (and, it follows, against) each available forum as to the convenience of witnesses. On balance, given the important Morgan Stanley situation, the stipulation as to Harvester (including its inside directors), no indication that the Chicago-based outside directors (defendants in some but not all of the actions) were intimately involved in the offering and, even if so, that they would not join with Harvester and its inside directors in the arrangement (they are represented by the same counsel), and the fact that witnesses for the financial community and the accounting profession pose some conveniences and some inconveniences as to each forum, the balance appears to favor New York somewhat. Much of the argument presented by each side in this respect is plainly overstated, a permissible exercise of advocacy.

(5) Everyone agrees that it would be counterproductive for the seven cases to be litigated in different courts. This Court has given that consideration little if any weight. It believes that Judge Lowe would share that view, so that *Weinberger* would be transferred here if this Court were to have denied the Section 1404(a) motion. As already stated, *Darvin* is a Rule 10b–5 action filed on behalf of all Harvester's equity security holders other than the new Preferred Stock purchasers, so it involves a different class from that in the other six cases. Nonetheless the Court has also assumed that a motion for its transfer would likely be filed (and likely granted) in *Darvin* if the other actions were in this Court. Absent such a motion, the Court has assumed *Darvin* would likely be transferred by Judge Lowe on her own motion. *National Acceptance Co. of America v. Wechsler*, 489 F.Supp. 642, 649 n.9 (N.D.Ill.1980);

15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3844 at 208–09.

(6) One claim in the *Rosenberg* case (though not the others) is a pendent state claim based on negligent misrepresentation. This Court is presumed to be more familiar with Illinois law than its counterpart in New York (and the hope is that the reality conforms to the presumption). *Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 823, 11 L.Ed.2d 945 (1964) reconfirmed the statement in *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. at 843:

> There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Where the principal gravamen of all the cases lies in federal securities law rather than local law, that factor deserves no significant consideration.

(7) Other contentions advanced by the parties have been considered by the Court. Neither singly nor in the aggregate do they lead to a different end result.

### Conclusion

Defendants' motion is granted. Each of the five actions pending before this Court is transferred to the United States District Court for the Southern District of New York.