JOB HAINES HOME FOR THE AGED, a non-profit association, in its individual capacity and on behalf of all persons similarly situated, Plaintiffs,

v.

Herbert J. YOUNG, John R. Williamson, Robert R. Sprague, Houston I. Flournoy, Bernice H. Hutter, Melvin P. Spitz, Rafael E. Vega, KPMG Peat Marwick, Peat Marwick & Co., Peat Marwick Main & Co. and Gibson, Dunn & Crutcher, Defendants.

Civ. No. 95–2055.

United States District Court,
D. New Jersey.

Aug. 2, 1996.

William F. Maderer, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, Stephen A. Kroft, McDermott, Will & Emery, Los Angeles, CA, for Defendant Gibson, Dunn & Crutcher.

Louis H. Miron, Westfield, NJ, for Defendants Herbert J. Young, John R. Williamson, Robert R. Sprague, Houston I. Flournoy, Bernice H. Hutter, Melvin P. Spitz, Rafael E. Vega.

Martin C. Washton, Rory M. Hernandez, Gibson, Dunn & Crutcher, Los Angeles, CA, for Gibraltar Officer/Director Defendants.

Arthur R. Schmauder, Shanley & Fisher, Morristown, NJ, for Defendants KMPG Peat Marwick, Peat Marwick & Co., Peat Marwick Mitchell & Co., Peat Marwick Main & Co.

Robert H. Bretz, Marina del Rey, CA, Daniel H. Luciano, Califon, NJ for Plaintiffs.

## OPINION

CHESLER, United States Magistrate Judge.

### I. Introduction.

This matter comes before the Court on the motions of Defendants to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a).[1] This matter was referred to the undersigned by the Honorable Maryanne Trump Barry, U.S.D.J. Oral argument was heard on July 22, 1996. For the reasons stated below, the motions are granted.

1. Separate motions to transfer were filed by Gibson Dunn & Crutcher, the individual officers and directors, and by KPMG Peat Marwick.

2. The "Director Defendants" are Herbert J. Young, John R. Williamson, Robert R. Sprague, Houston I. Flournoy, Bernice H. Hutter, Melvin P. Spitz, and Rafael E. Vega.

3. The accounting firm defendants are KPMG Peat Marwick, Peat Marwick & Co., Peat Mar-

### II. Background.

This securities class action case arises from allegedly "false and misleading public representations, statements and assurances affecting the offer, sale, purchase and trading in the public debt securities of Gibraltar [Savings, a wholly owned subsidiary of Gibraltar Financial Corporation]." (Compl. ¶ 1.) Gibraltar Savings ("Gibraltar") was a "federally insured savings and loan based in Beverly Hills, California." (Compl. ¶ 2.) Plaintiff contends that Gibraltar, although actually sustaining substantial losses for 1986, "publicly reported 'record earnings' of approximately $49 million." (Id. at ¶ 5–6.) Plaintiff alleges causes of action under federal securities law, as well as under New Jersey state law.

The defendants in this action are: the officers and directors of Gibraltar Financial Corporation ("GFC") (the "Director Defendants"),[2] all of whom reside in California, except for Mr. Vega, who resides in Las Vegas, but maintains business operations in California, (Vega Cert. ¶ 5), and who all worked for Gibraltar in California; GFC's accountants,[3] whose Los Angeles office audited GFC, (Taft Decl. ¶ 3); and GFC's attorneys, Gibson, Dunn & Crutcher ("Gibson Dunn"), who worked out of their Los Angeles office.

Defendants moved to transfer this action to the Central District of California where, Defendants contend, "all of the events giving rise to this Action occurred." (Def. Gibson, Dunn & Crutcher LLP's Mem. in Supp. of Mot. for Trans. of Venue Pursuant to 28 U.S.C. § 1404(a) [hereinafter "D.Mem."] at 4.)[4]

Therefore, the question this Court must address is whether, in a class action securi-

wick Mitchell & Co., and Peat Marwick Main & Co.

4. Although the Director Defendants and Defendant KPMG Peat Marwick also filed motions to transfer to the Central District of California under § 1404(a), their motion papers indicated that they will rely on the Memorandum of Law in Support of the Motion to Transfer submitted by defendant Gibson Dunn & Crutcher. Furthermore, these defendants also joined in Gibson Dunn's reply papers.

ties litigation, where the underlying facts have virtually nothing whatsoever to do with the forum state, and it is only a fortuitous happenstance that the named class representative resides in the forum state, a court must preserve the plaintiff's choice of forum. The answer is clearly "no." For the reasons discussed below, this action will be transferred to the Central District of California.

### III. Discussion.

#### Section 1404(a) Transfers, Generally

■ Section 1404(a) permits a court to transfer a federal action from one federal district to another "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Such a transfer is restricted, however, to "any other district or division where [the case] might have been brought." *Id.* The purpose of allowing such transfers is to "prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). The key considerations for the court to review when deciding a motion to transfer, therefore, are 1) the convenience of the parties, 2) the convenience of the witnesses, and 3) the interests of justice.

As a preliminary matter, this Court notes that the Central District of California is a venue in which this case "could have been brought," and, therefore, a request to transfer this case to that district is proper under § 1404(a). Because all of the defendants are residents of California, and/or do business there, the Central District of California would have personal jurisdiction over the defendants. Because the alleged wrongdoing arose from acts performed in California, that is also a proper venue for this case.[5]

In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed specific factors for courts to consider when deciding transfer motions. The private factors noted by the *Gulf Oil* court include

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.... [T]he plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.

*Id.* at 508, 67 S.Ct. at 843. The public factors deal with such things as court congestion, burdensome jury duty in a community unrelated to the litigation, the interest of having a local dispute decided in that locality, and the preference of having a state-law governed case decided in the forum familiar with that law. *Id.* at 509, 67 S.Ct. at 843.

■ Analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case." *Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 479 (D.N.J.1993). Such determinations are discretionary with the judge. *Id.*

■ The party moving for transfer not only has the burden of going forward, but also the burden of persuasion. *Lony v. E.I. Du Pont de Nemours & Co.,* 935 F.2d 604, 609 (3d Cir.1991). Therefore, the plaintiff's choice of forum will prevail, unless the party moving for the transfer can convince the court otherwise. The moving party must thus prove that "its alternative forum is not only adequate, but more convenient than the present forum." *Hudson United Bank v. Chase Manhattan Bank,* 832 F.Supp. 881, 888 (D.N.J.1993), *aff'd,* 43 F.3d 843 (3d Cir. 1994).

■ In deciding transfers under § 1404(a), courts, therefore, generally assign the plaintiff's choice of forum significant weight.

---

5. Indeed, as Defendants point out, and as will be further discussed later, "the Central District of California has already exercised jurisdiction over these same defendants with respect to these same allegations. *See, e.g., Glavaris, et a. v. Young, et al.,* No. 90–6185; *Binder, et al. v. Young, et al.;* No. 92–5715." (D.Mem. at 21.)

*Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F.Supp. 1244, 1246 (D.N.J. 1994). In certain situations, however, less deference is given to plaintiff's choice, for example, when "the case has little connection with the chosen forum." *Id.* See also, *AT & T v. MCI*, 736 F.Supp. 1294, 1306 (D.N.J. 1990).("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference."); *Hardaway Constructors, Inc. v. Conesco Ind., Ltd.*, 583 F.Supp. 617, 620 (D.N.J. 1983) (plaintiff's choice of forum has less significance where "there is an absence of any significant contact by the forum state with the ... transactions or conduct underlying the cause of action").

■ Another situation where "the plaintiff's choice of a forum becomes substantially less important [is] when he sues representatively on behalf of a class." *Firmani v. Clarke*, 325 F.Supp. 689, 691 (D.Del.1971). In a class action, the named plaintiff's testimony and other input is likely to be minimal. *Id.* Furthermore, plaintiff classes are often comprised of residents of many states. Thus, a multitude of states could have interests in seeing their citizens' complaints justly addressed. The residence of the class representative becomes a mere happenstance. The choice to sue in that named plaintiff's home state, a mere fortuity.

Therefore, the weight of authority holds that in class actions and derivative law suits the class representative's choice of forum is entitled to lessened deference. *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832 91 L.Ed. 1067 (1947) (determining in this derivative action that "where there are hundreds of potential plaintiffs ... all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"); *Baldwin v. Nat'l Safety Assoc., Inc.*, 1994 WL 139267, * 2 (N.D.Cal. April 6, 1994); *Werbowsky v. Am. Waste Serv. Inc.*, 1992 WL 147924, * 2 (S.D.N.Y. June 15, 1992); *Supco Automotive Parts v. Triangle Auto Spring Co.*, 538 F.Supp. 1187, 1192 (E.D.Pa.1982) (noting that in class actions "plaintiff's choice of fo-

rum deserves less weight); *Blake Constr. Co. v. Int'l Harvester Co.*, 521 F.Supp. 1268, 1271–72 (N.D.Ill.1981) (finding little weight to be given class representative's choice of forum); *Blender v. Sibley*, 396 F.Supp. 300, 302 (E.D.Pa.1975) (indicating that far less weight is accorded plaintiff's choice in class actions and derivative suites); *Harris v. Am. Inv. Co.*, 333 F.Supp. 325, 326 (E.D.Pa.1971); *Fogel v. Wolfgang*, 48 F.R.D. 286, 290 (S.D.N.Y.1969) (applying *Koster's* logic to class actions). But see, *Carty v. Health–Chem Corp.*, 567 F.Supp. 1 (E.D.Pa.1982).

"[T]he preference for honoring a plaintiff's choice of forum is simply that, a preference[,] ... not a right," *AT & T v. MCI*, 736 F.Supp. 1294, 1306 (D.N.J.1990). Nevertheless, the 1404(a) factors are still balanced by the court in making a transfer determination, and the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice. *Hardaway Constructors*, 583 F.Supp. at 620.

■ In reviewing the factors which weigh for or against transfer, this Court must look to facts which are a matter of record, not merely to assertions in the attorneys' briefs. *Ricoh Co.*, 817 F.Supp. at 480. One of the factors to consider is "whether the moving party submitted adequate data of record to facilitate an appropriate analyses." *Hudson United Bank v. Chase Manhattan Bank*, 832 F.Supp. 881 (D.N.J.1993) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973)).

### The Special Venue Provision of the 1934 Act

■ Plaintiff asserts that Section 27 of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78aa, provides plaintiffs in securities suites, such as this one, with a special venue provision such that Plaintiff's choice of venue under this statute should not be disturbed. Plaintiff contends that this section gives plaintiffs "the right to select the venue for the plaintiff's legal action in *any* United States Federal Court." (Pl.Joint Resp. and Opp. to D.Mot. to Change Venue [hereinafter "Pl.Resp."] at 8 (emphasis in the original).) Plaintiff is misreading the statute.

This section provides that

Any criminal proceeding [under the Act] may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any *such* district or in the district wherein the defendant is found or is an inhabitant or transacts business.

15 U.S.C.A. § 78aa (emphasis added). The statute does not provide that a suit or action to enforce liability under the Act may be brought in *any* district in the United States, but in "any *such* district." *Id.* (emphasis added). Applying laws of grammatical construction, "such district" refers to the district just described. In other words, to the type of district where a criminal action may be brought, or "the district wherein any act or transaction constituting the violation occurred." *Id.*

It is clear from this statute that the defendants must have some connection with plaintiff's choice of forum: the defendant's alleged wrongful act must have occurred there; the defendant must be found there; the defendant must reside there; or the defendant must do business there. Therefore, Plaintiff is incorrect in asserting that suits under this section may be brought willy-nilly in any federal district the Plaintiff chooses.

■ Assuming, arguendo, however, that New Jersey is a proper venue under this statute, nothing in the statute precludes the court from entertaining a motion to transfer under § 1404(a).

There is support for the proposition that more significance should be allotted to plaintiff's choice of forum, when the action is brought under the 1934 Act. *See, e.g., S–G Securities, Inc. v. Fuqua Inv. Co.,* 466 F.Supp. 1114, 1122 (D.Mass.1978). Plaintiff contends that this is proper because section 78aa evidences "the underlying federal policy of allowing the plaintiff the widest possible choice of forums." (Pl.Resp. at 8, *citing S–G*

*Securities,* 466 F.Supp. at 1122.) *S–G Securities,* however, is not a class action case, but one brought by an individual plaintiff.[6]

At oral argument Plaintiff's attorney pointed the Court to *Merrill Lynch, Pierce, Fenner & Smith v. Rajcher,* 609 F.Supp. 291 (S.D.N.Y.1985), another individual-plaintiff case, wherein that court stated that "[t]he venue provision of the Exchange Act was designed to allow the plaintiff the widest possible choice of forum, which will not be disturbed unless the movant shows that the balance of convenience and justice weights heavily in favor of transfer." *Id.* at 293. That court was considering a transfer motion under section 1404(a) and determined that the defendant had failed to make the required showing to support the transfer. *Id.*

This Court agrees that the factors to balance are convenience and justice, as required under section 1404(a). Even if this Court adopts the standard as proposed by Plaintiff and requires that the balance weigh heavily in favor of transfer before granting Defendants' motions, Section 78aa clearly does not "prohibit the transferring of a ... class action to another jurisdiction which is clearly a more convenient jurisdiction for litigating the dispute." *Harris v. Am. Inv. Co.,* 333 F.Supp. 325, 327 (E.D.Pa.1971).

### Location of the Underlying Actions

■ Because a plaintiff's choice of forum is given less weight if "the case has little connection with the chosen forum," *Newcomb,* 847 F.Supp. at 1246, and because the public factors to be analyzed must be done so in relationship to the relevant forum, it is important to analyze at the outset the action's connections to the chosen forum.

Plaintiff's First Amended Complaint for Federal Securities Fraud and Pendant State Claims (hereinafter "Complaint"), alleges that the "Defendants made false and misleading statements of material facts regarding Gibraltar securities," (Compl. ¶ 199), and that such "false and misleading statements

**6.** The other case cited by Plaintiff to support this heightened deference, *Los Angeles Memorial Coliseum Comm'n v. NFL,* 89 F.R.D. 489, 494 (C.D.Cal.1981), deals with anti-trust litigation, not a securities case. *Id.* ("defendant's burden on a transfer motion is said to be especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect.")

were intended to be and were directed by the Defendants to and were received by the Plaintiff in New Jersey." (Compl. ¶ 200.) Plaintiff further contends that the "claims upon which this action is based occurred in New Jersey where the Plaintiff was fraudulently induced to purchase Gibraltar bonds by Gibraltar's activities in New Jersey." (Pl. Resp. at 2.) Because "Plaintiff is a New Jersey resident, suing under New Jersey and Federal Law, on claims that arose in New Jersey as a result of Defendants' activities in, and otherwise directed at and affecting residents of, New Jersey," (*id.* at 5–6), Plaintiff urges this Court to keep this case in New Jersey.

Unfortunately for Plaintiff, I do not see how the activities complained of in Plaintiff's complaint can be viewed as having a substantial connection with New Jersey. The Complaint alleges that the defendants, California companies and California residents working for companies in California, made false and misleading statements regarding the offer, sale, purchase and trading of pubic debt securities of Gibraltar Savings, a Beverly Hills, California savings and loan. (Compl. ¶¶ 1–2.) Some of the false statements allegedly relate to Gibraltar's commercial real estate development property known as The Galleria.[7] (*Id.* ¶ 8.) The Plaintiff further alleges a "scheme to cover-up and conceal the actual losses that Gibraltar had suffered," (*id.* ¶ 12), and a wrongful decision by Gibraltar's management to transfer The Galleria off Gibraltar's books. (*Id.*) From the papers before this Court, it appears that these alleged activities, if they did, indeed, occur, occurred in California. Therefore, it appears that the focus of the activity of which Plaintiff complains, occurred in California.

Plaintiff's arguments that the false statements were directed to New Jersey does not make New Jersey a forum which has a significant connection with the operative facts. Thus, New Jersey has no more connection with the transactions and conduct underlying the case than any other venue to which the material was directed. In short, it is obvious that the key transactions underlying this suit occurred in California. New Jersey has no greater connection with the case than any other jurisdiction in which any potential class member resides.

Therefore, California is the forum to which the factors involved in this case are most connected. Nothing has been presented to this Court from which I can see any of the alleged causes of action arising in New Jersey, or otherwise having anything specific to do with New Jersey, other than the fortuity of being the residence of the named class representative.

### *Deference to Accord Plaintiff's Choice of Forum*

■ There is nothing in this record to convince me to accord Plaintiff's choice of forum much deference in this case at all. As discussed above, the transactions underlying this case have no substantial connection with New Jersey. Therefore, less deference is accorded plaintiff's choice of forum. *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F.Supp. 1244, 1246 (D.N.J. 1994). Moreover, this is a class action with a nominal plaintiff.[8] Less deference should be accorded plaintiff's choice for this reason as well. *Firmani v. Clarke,* 325 F.Supp. 689, 691 (D.Del.1971). *See also,* relevant cases cited, *supra,* p. 228.

---

**7.** The Galleria was located in Metairie, Louisiana. *Glavaris v. Young,* No. 90–6185, at 4 (C.D.Calif. filed Aug. 11, 1994).

**8.** The size of Plaintiff's financial stake, contrary to Plaintiff's assertion at oral argument, without more, is insufficient to accord Job Haines Home more than nominal plaintiff status. *See, Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832 91 L.Ed. 1067 (1947). In *Koster,* the Court noted that "although the plaintiff may have a substantial interest of his own to protect,

he may also be a mere phantom plaintiff with interest enough to enable him to institute the action and little more." *Id.* at 525, 67 S.Ct. at 832. That Court distinguished a "phantom plaintiff," who had no specific personal knowledge which would help make plaintiffs' case, from a plaintiff who had personal knowledge of the corporate affairs, or who had taken a personal part in the corporate dealings, or who otherwise personally participated in the underlying actions making it "requisite or at least expedient for him personally to be present at the trial." *Id.*

Plaintiff nevertheless argues, as noted above, that the 1934 Securities Exchange Act's special venue provision heightens the deference given to plaintiff's choice. Assuming, *arguendo,* that this is so, the cases cited by Plaintiff still require that a court balance convenience and justice when faced with a motion to transfer, and indicates that when these factors weigh heavily in favor of transfer, plaintiff's choice of forum may be disturbed. *Merrill Lynch, Pierce, Fenner & Smith v. Rajcher,* 609 F.Supp. 291, 293 (S.D.N.Y.1985). Such is the case here. Therefore, even if the Court were to conclude that plaintiff's choice of forum were entitled to substantial deference, these factors weigh sufficiently in favor of a transfer to override any such preference. A plaintiff's choice of forum under Section 78aa alone is not dispositive of a 1404(a) transfer motion.

### Convenience of the Parties

On a "convenience of the parties" analyses, the defendants win, hands down. All the defendants are located in California.[9] The potential class members in this action are located, apparently, although no specific evidence has been submitted supporting this fact, all over the United States.

As noted earlier, the participation of the class representative is generally minimal. Plaintiff has not submitted any evidence which indicates that the class representative's participation in this litigation will be anything else.

Plaintiff does indicate that its "volunteers do not have the time it would take for them to manage and participate in this action in California (as opposed to New Jersey)." (Pl. Resp. at 6.) (*See,* Bretz. Decl. ¶ 43 (claiming it would be "extremely difficult if not impossible [for Plaintiff] to assist in the further prosecution of this case at trial if the place of such trial was transferred from Newark to Los Angeles").) Even accepting this as so, the minimal role played by a class representative suggests minimal demand on Plaintiff to be in Los Angeles.

Therefore, the balance is between one nominal class representative located in New Jersey, and twelve defendants located in California. On the record before this Court, it is clearly more inconvenient for the defendants to travel to New Jersey than it is for the named plaintiff to go to California.

### Convenience of the Witnesses

In addition to the party witnesses, the Defendants have identified five non-party defense witnesses who all live in southern California, and are therefore beyond the subpoena power of the New Jersey court.

Alvin Kang and Linda McCall, two former Peat Marwick employees, have "the most relevant knowledge about the engagement and the audit of GFC's financial statements that are at issue in this action." (Taft Decl. ¶ 3.) Both are employed in the Los Angeles area. (*Id.* ¶¶ 4–5.)

Arthur Schmutz, a former Gibson Dunn partner, now retired, who was responsible for GFC's corporate legal work, now maintains an office in Los Angeles. (Washton Cert. ¶ 3.) Madeleine Kleiner, a former Gibson Dunn attorney, lives in Los Angeles and is general counsel there for H.F. Ahmanson & Co. (*Id.*) Robert Gelber, a current Gibson Dunn attorney, works in the firm's Los Angeles office. The Court recognizes that, although no longer all in the Defendants' employ, these witnesses would more likely than not still be willing to testify for the Defendants in New Jersey. This evidence, however, supports the defendants' contentions that it is more convenient for these witnesses to testify in the Central District of California than in the District of New Jersey. Moreover, should their willingness become an issue, this Court could not enforce their attendance at a trial in New Jersey.

On the other hand, Plaintiff has not submitted the name of one non-party witness who resides or works in New Jersey. The one specific non-party witness proffered, Mr. Dean Harrison, former General Counsel and Secretary of Gibraltar (who is asserted by Plaintiff to be its "star witness"), lives in Boston and, by his own certification, indicated that "testifying in Los Angeles is likely to be more convenient than testifying in New

---

**9.** As noted earlier, although Defendant Vega re-   sides in Nevada, he does business in California.

Jersey." (Harrison Cert. ¶ 5.) The other non-party witnesses mentioned by Plaintiff have not been specifically identified, but are merely suppositions and speculations in Plaintiff's brief. (*See* Pl.Resp. at 14–16 (indicating intended non-party witnesses would be representative of SEC allegedly in Washington, D.C.; representative of NYSE allegedly in New York; representative of AMEX allegedly in New York; and a "representative of one or more of the Wall Street investment banking firms who were visited by Jerome Nussbaum of Gibraltar in 1986").) I must rely on the factual record of the case in making the transfer determination. *Ricoh Co.*, 817 F.Supp. at 480. There is absolutely nothing in the record regarding the availability, or even the names, of these witnesses. Therefore, there is nothing on which to support a finding that it would be inconvenient for any of these non-specific witnesses to travel to California—or, indeed, that they have any testimony of significance to offer.

Defendants, therefore, have sustained their burden of proving that, as regards the convenience to the witnesses, "its alternative forum is not only adequate, but more convenient than the present forum." *Hudson United Bank v. Chase Manhattan Bank*, 832 F.Supp. 881, 888 (D.N.J.1993).

### Access to Documentary Sources of Proof

■ Defendants have presented evidence that the majority of the documentary evidence is located in California. Apparently, the Gibraltar documents are located in Fullerton, California, which is approximately 30 miles from downtown Los Angeles. (Conant Decl. ¶ 3; Spaziano Decl. ¶ 3 and Ex. 2.) The relevant Gibson Dunn files are located in Gibson Dunn's Los Angeles office. (Washton Cert. ¶ 4.)

Although Plaintiff has contended that moving the files from California to New Jersey is no hardship to Gibraltar, because Gibraltar is no longer in business, this argument is invalid as to the Gibson Dunn records. The volume of documents which could possibly need to be moved, 60,000 boxes according to Defendants, of Gibraltar documents alone, is a consideration. This Court does acknowledge, however, that shipping the documents anywhere is, indeed, a possibility, and their current location in California does not preclude this case from being tried elsewhere. The documents' location is merely one factor to consider.

Despite Defendants' overwhelming proffer of evidence located in California, Plaintiff has not submitted any evidence indicating what documentary evidence Plaintiff intends to submit which is now located in New Jersey. Thus, this factor weighs in favor of Defendants' transfer request.

### Denying Defendants their Choice Forum Because of Allegedly Fraudulent Conduct

■ Plaintiff contends that "Defendants having purposefully set out to deceive New Jersey residents in respect of the investment quality of Gibraltar's securities . . . should not now be heard to complain that it will be inconvenient for them or their witnesses to have to defend Plaintiffs' claim in New Jersey." (Pl.Resp. at 12.) Furthermore, Plaintiff asserts that, because the Complaint alleges fraudulent conduct, the egregious nature of the claims should preclude this Court from granting Defendants' motion. (*Id.* at 20–22.) Without citing to any case law for support, Plaintiff insists that this Court can reach these conclusions because this Court should accept the allegations in Plaintiff's complaint as true. (*Id.* at 20.) This the Court can not do.

Nothing in the case law before me suggests that I should address the merits of a case in a motion to transfer. There have been no findings of fact, nor stipulations to facts, which suggest that Plaintiff's allegations are true. That is for the trier of fact to decide. My role at this point in the litigation is merely to weigh the balance of convenience and the interests of justice to ensure that this matter is played out in a convenient forum. Period. The fact that Plaintiff has made allegations of fraudulent conduct does not affect this computation. I decline Plaintiff's suggestion to deny Defendants' motion to transfer on this basis.

*Plaintiff's Choice of Law Argument*

■ Plaintiff also contends that because Plaintiff has asserted causes of action under New Jersey state law, and the District of New Jersey is more familiar with New Jersey law than the District of California, this case should remain in New Jersey. The problem with this argument is that, in all likelihood, the New Jersey state law claims would only be relevant to the New Jersey class members. Kansas class members, for example, would have, allegedly, had the misrepresentations directed at them in Kansas, in violation of Kansas law. For a California class member, it would be a violation of California law. *See, Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818–21, 105 S.Ct. 2965, 2977–79, 86 L.Ed.2d 628 (1985) (finding that in a class action to recover royalty payments on leased land located in eleven states, the Kansas Supreme Court erred in applying Kansas law to all the claims, determining that a state must have "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law[, as applied to each plaintiff,] is neither arbitrary nor fundamentally unfair.")

Therefore, whatever district court hears this case is going to have to make a choice of law determination regarding what state's law is appropriate to apply relative to the state law causes of action. There is no evidence before this Court indicating that the majority of the plaintiffs are New Jersey residents such that New Jersey law would mainly apply. Thus, the conflicts of law argument is not one favoring Plaintiff's choice of forum.

*Other Public Interest Factors*

■ One public interest factor to address is court congestion and the administration of the court's docket. *Moore v. St. Paul Companies, Inc.,* 1995 WL 11187, at *11 (D.N.J. Jan. 3, 1995). Defendants have submitted evidence indicating that the District of New Jersey has, on average, a 24 month time interval from filing a case, to its trial date. (Spaziano Decl.Ex. 3.) The Central District of California has, on average, a 19 month time interval. (*Id.* Ex. 4.) This five-month difference weighs, if at all, in favor of a transfer to California.

■ Another public interest factor to address is the burden of jury duty on the chosen forum. "The burden of jury duty 'ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 486 (D.N.J.1993) (*citing Ferens v. John Deere Co.,* 494 U.S. 516, 529–30, 110 S.Ct. 1274, 1282–83, 108 L.Ed.2d 443 (1990) (citation omitted)). Therefore, having determined that New Jersey has little connection to this litigation, it would be an improper burden to encumber the citizens of New Jersey with jury duty in this matter.

■ A third criteria under the public interest factors is whether there are related law suits pending elsewhere. "[I]t is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Ricoh Co.,* 817 F.Supp. at 487. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960).

A strong public policy favors avoiding duplicative litigation in different fora. *Firmani v. Clarke,* 325 F.Supp. 689, 693 (D.Del.1971). Where the parties and issues are the same, or similar, and another court is already familiar with the case, bringing related litigation together in one forum ensures that "pretrial discovery may be conducted more efficiently, witnesses' time may be conserved, public and parties' litigation expenses may be reduced, and inconsistent results can be avoided." *Id.*

This action is apparently the sixteenth alleging federal securities fraud and state law claims against these defendants. The previous fifteen cases were filed in federal and state courts in Los Angeles, California. The Honorable Mariana Pfaelzer, U.S.D.J. for the Central District of California, lays out the procedural history of these cases in excruciating detail in her Second Memorandum of Decision, *Glavaris v. Young,* No. 90–6185 (MRP), at 3–33 (C.D.Calif. Filed Aug. 11,

1994). I will make no effort to summarize these facts here, assuming that the parties in this matter are well familiar with them.

At the start of her decision, Judge Pfaelzer noted "[a]s the Court has previously advised plaintiff's counsel, Robert Bretz ("Bretz"), at some point the litigation over these issues must be brought to a conclusion." *Id.* at 3. I note that Mr. Bretz, who is a California lawyer, requested, and was granted, *pro hac vice* admission before this Court for the purpose of litigating the *Job Haines* matter in New Jersey. It appears from Judge Pfaelzer's decision that Mr. Bretz has been involved with this matter from the outset, as she indicates that he was present at an early 1987 meeting regarding problems with the Galleria, wherein litigation was threatened. *Id.* at 7. In fact, Mr. Bretz commenced the first litigation against these defendants in California, *Stahl v. Gibraltar Financial Corp.*, No. 87–3147 (MRP), which he filed in the Central District of California on May 14, 1987. *Id.* at 8.

Plaintiff admits that the claims filed in the *Job Haines* action were the subject of a case previously filed in federal court in California, *Glavaris v. Young*, 90–6185 (MRP) (C.D. Calif. filed Nov. 16, 1990). (Compl. ¶ 130.) Judge Pfaelzer dismissed the plaintiff's claims in that case, and an appeal is currently pending before the Ninth Circuit.[10] Moreover, Plaintiff notes that it has "taken the protective measure of temporarily joining in a related action pending in California State Court, asserting claims under California law, captioned *Ades, et al. v. Young, et al.*, L.A.Sup.Ct. Case No. BC 127187 (the "Ades action"). (Pl. Resp. at 1.) This "protective measure," as well as the fact that Plaintiff has retained California counsel in this action, belie Plaintiff's argument that it would be inconvenient to litigate this matter in California.[11]

A review of all the evidence before me, including court records from the related California cases, convinces me that Mr. Bretz's

effort to bring an action in New Jersey is nothing more than forum shopping. He even mentions that Judge Pfaelzer "frequently commented from the bench in [his] presence as to how she hoped to never see another Gibraltar case in her courtroom." (Bretz. Cert. ¶ 28.) Judge Pfaelzer, however, is intimately familiar with this case. It would be a gross waste of judicial resources to start litigating this case from scratch in the District of New Jersey. Although Plaintiffs may not like the results they have been getting in California, that is not a factor which is considered on a 1404(a) transfer. Familiarity of a court with the subject matter of an action, and concern about consistent results, most certainly are, however.

### *1404(a) Decisions Should not be Delayed*

■ Plaintiff urges this Court to "consider the advisability of denying the Motion without prejudice to renewal thereof if, at some future point in time, it appears that this case will probably go to trial." (Pl.Resp. at 23.) Plaintiff argues that few complex securities law cases are ever tried and that the 1404(a) considerations are those relevant only to inconvenience if the case is tried. (*Id.* at 22.) The case law in this Circuit is to the contrary.

In *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir.1991), the Third Circuit clearly indicated that "Motions to dismiss based on forum non conveniens usually should be decided at an early state in the litigation, so that the parties will not waste resources on discovery and trial preparation in a forum that will later decline to exercise its jurisdiction over the case." *Id.* at 614. Therefore, the option to dismiss this motion without prejudice is not an available one.

### *IV. Conclusion.*

This case has virtually no connection with New Jersey. The Defendants are in California. The alleged wrong doing occurred in California. The documents are in California. Plaintiff's lawyer is from California. The

---

**10.** Plaintiff is seeking to intervene in that action on appeal.

**11.** The *Ades* action was recently dismissed. Nevertheless, the filing of the action by the same

California attorney who has been admitted *pro hac vice* here, strongly suggests there is little or no hardship to Plaintiff in pursing this claim in California.

defense witnesses are all in California, and Plaintiff's only named non-party witness does not object to testifying there. The California courts are intimately familiar with this matter. There is nothing before this Court which convinces me to retain this matter in New Jersey.

In short, even if this Court were to conclude that Plaintiff's choice of a forum was entitled to heightened deference, the public and private factors discussed here not only weigh heavily in favor of transfer, but so overwhelmingly favor California as the more convenient forum that there is no doubt but that this case should be transferred.

For the reasons discussed above, Defendants' motions to transfer this action to the Central District of California are all granted. An appropriate order will issue.