Roger KINGSEPP, On behalf of himself and all others similarly situated, Plaintiff,

v.

WESLEYAN UNIVERSITY, Princeton University, Harvard University, Yale University, Dartmouth University, Stanford University, Brown University, Amherst University, Williams University, University of Pennsylvania, Columbia University, and Cornell University, Defendants.

No. 89 Civ. 6121 (DNE).

United States District Court, S.D. New York.

May 2, 1991.

Steven M. Kramer & Associates, New York City (Steven M. Kramer, of counsel), for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, Stanley D. Robinson, John W. Shryber, New York City, (Palmer & Dodge, Thane D. Scott, Michael T. Gass, Bruce D. Berns, Boston, Mass., of counsel), for defendant Williams College.

Baker & Hostetler (Alan S. Ward, Lee H. Simowitz, Jenifer M. Brown, of counsel), Washington, D.C., for defendant Wesleyan University.

Richards & O'Neil, Charles E. Dorkey, III, New York City (Dartmouth College, Cary P. Clark, Thomas W. Soybel, Hanover, N.H., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Washington, D.C., and Bruce D. Sokler, Bruce F. Metge, Beth I.Z. Boland, Boston, Mass., of counsel), for defendant Trustees of Dartmouth College.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendants Wesleyan University ("Wesleyan"), The President and Trustees of Williams College ("Williams"), and the Trustees of Dartmouth College ("Dartmouth") have moved pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) to dismiss this putative class action antitrust case against them on the grounds that this Court lacks personal jurisdiction and that venue is improper, and, in the alternative, pursuant to 28 U.S.C. § 1406 to transfer this action to a district in which it could have been brought. For the following reasons, defendants motions are denied.

## I. BACKGROUND

Plaintiff Roger Kingsepp, a student at Wesleyan, commenced this action on September 15, 1989. In his complaint, plaintiff alleges that defendants "have engaged in a conspiracy to fix or artificially inflate the price of tuition and financial aid." (Complaint, ¶ 6). As a result of the alleged conspiracy, plaintiff claims that "tuition and financial aid have been fixed, stabilized and inflated in violation of Section One of the Sherman Act" and that the class has therefore been damaged by "having to pay higher tuition than in a free competitive market." *Id.* at ¶ 13.

## II. DISCUSSION

Wesleyan, Williams, and Dartmouth (the "moving defendants") have moved to dismiss the complaint against them for lack of personal jurisdiction and improper venue, and, in the alternative, to transfer this action to a district in which it could have been brought. The moving defendants contend

that they are not subject to jurisdiction under the nationwide service of process provisions of the antitrust laws or under the New York long-arm statute, and that venue is improper under any of the applicable venue statutes. The remaining defendants do not contest jurisdiction and venue. Plaintiff has asserted personal jurisdiction over the moving defendants under section 12 of the Clayton Act, 15 U.S.C. § 22, and New York Civil Practice Law §§ 301, 302(a)(1), and 302(a)(3). Plaintiff also claims that venue is appropriate under section 12 of the Clayton Act and under the general federal venue provision, 28 U.S.C. § 1391(b).

### A. Personal Jurisdiction

The moving defendants argue that plaintiff's claim "that jurisdiction is available under Section 12 of the Clayton Act even if defendants have no contacts with New York, or this district, so long as they have contacts with the United States.... is plainly wrong." (Reply Memorandum of Moving Defendants, p. 14). In support of this argument, they assert that "this basis of jurisdiction applies *only* to aliens, and not to domestic entities such as the moving defendants." *Id.* (emphasis in original). Plaintiff's assertion of jurisdiction under section 12, at least as to Wesleyan and Williams, is well founded; it is the moving defendants' argument that is plainly wrong.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes service of process on an out of state party when authorized by a federal statute. Personal jurisdiction in an antitrust action is governed by section 12 of the Clayton Act, 15 U.S.C. § 22, which provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Section 12 authorizes out of state service on a corporate defendant in an antitrust action, but does not specifically mention the exercise of personal jurisdiction. However, the statute's authorization of service outside the state has been interpreted as authorizing federal courts to exercise nationwide personal jurisdiction over corporate antitrust defendants. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 204 n. 6 (D.C.Cir.1981); *The National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*, No. 86 Civ. 5047, slip op. at 10 (S.D.N.Y. September 5, 1989); *Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1312 (S.D.N.Y.1986); *Dunham's, Inc. v. Nat'l Buying Syndicate of Texas*, 614 F.Supp. 616, 623 (D.C.Mich.1985); *General Electric v. Bucyrus–Erie Co.*, 550 F.Supp. 1037, 1038 (S.D.N.Y.1982).

In cases where Congress authorizes nationwide federal jurisdiction, as in section 12 of the Clayton Act, the district court's jurisdiction is co-extensive with the boundaries of the United States. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *see Go–Video, Inc. v. Akai Electric Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989). Thus, a defendant who resides within the territorial boundaries of the United States is subject to personal jurisdiction under nationwide service of process without regard to state jurisdictional statutes. *Greene v. Emersons Ltd.*, 86 F.R.D. 47, 65 (S.D.N.Y.1980). Further, it is not necessary that the resident defendant have the requisite minimum contacts with the state that would exercise jurisdiction. *Mariash*, 496 F.2d at 1143; *see, e.g., F.T.C. v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir. 1981) ("a resident corporation necessarily has sufficient contacts with the United States to satisfy the requirements of due process").

In *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir.1974), the Court of Appeals specifically rejected the argument that a United States resident subject to nationwide service of process must have minimum contacts with the state in which the

federal court would exercise jurisdiction. *Id.* at 1143. The Court of Appeals stated:

> It is not the state of New York but the United States "which would exercise its jurisdiction over them [the defendants]." And plainly, where, as here, the defendants reside within the territorial boundaries of the United States, the "minimal contacts," required to justify the federal government's exercise of power over them, are present.

*Id.* at 1143 (citations omitted). In sum, when a defendant resides in the United States and is subject to nationwide service of process under a federal statute, the defendant is subject to personal jurisdiction in federal court without regard to state long-arm statutes and due process requirements are satisfied by the defendant's contacts with the United States.

■ Two of the three moving defendants are corporations. Wesleyan University is a non-profit, specially-chartered Connecticut corporation whose campus is located in Middletown, Connecticut. Williams is a non-profit corporation located in Williamstown, Massachusetts. As corporations which reside in the United States, Wesleyan and Williams are subject to nationwide service of process under Section 12 of the Clayton Act and subject to personal jurisdiction in this action. Dartmouth, however, contends that as a trust organized under a charter issued in the name of King George III of Britain,[1] it should not be deemed a "corporation" for purposes of section 12.

■ Section 12's nationwide service of process provision applies to corporations, and has been narrowly construed. In *McManus v. Tato*, 184 F.Supp. 958 (S.D.N.Y. 1959), Judge Weinfeld refused to apply section 12's nationwide service of process provision to a voluntary association, reasoning:

> "Persons", as defined in the Clayton Act, are "deemed to include corporations and associations"; yet section 12 of the same act, which authorizes extraterritorial service, specifies only "corporation". This specificity necessarily excludes individuals and voluntary associations from those amenable to extraterritorial service.

*Id.* at 959. A number of other cases have narrowly construed section 12's nationwide service of process provision so as to exclude non-corporate defendants. *See, e.g., Pocahontas Supreme Coal Company v. National Mines Corp.*, 90 F.R.D. 67, 69 (S.D.N.Y.1981); *In re Chicken Antitrust Litigation*, 407 F.Supp. 1285, 1299 (N.D. Ga.1975); *California Clippers, Inc. v. United States Soccer Football Ass'n*, 314 F.Supp. 1057, 1061 (N.D.Cal.1970); *Pacific Seafarers, Inc. v. Pacific Far East Line*, 48 F.R.D. 347, 349 (D.D.C.1969); *Thill Securities Corporation v. New York Stock Exchange*, 283 F.Supp. 239, 242 (E.D.Wis. 1968). Given the narrow construction of the term "corporation" in section 12 and the reluctance of courts to extend nationwide service of process under section 12 to non-corporate defendants, it would be inappropriate to extend section 12 to encompass a trust such as Dartmouth.

In *Kresberg v. Int'l Paper Co.*, 149 F.2d 911 (2d Cir.), *cert. denied*, 326 U.S. 764, 66 S.Ct. 146, 90 L.Ed. 460 (1945), the Second Circuit was faced with the question of whether to apply the term "any corporation" in a nationwide service of process provision to a trust with many of the attributes of a corporation. In rejecting the exercise of jurisdiction under the provision, the Court of Appeals stated:

> If and when Congress desires to have the term "any corporation" ... include an association like the Massachusetts trust in this case, a simple amendment is all that is required. Meanwhile it is not for

---

1. Under the terms its charter, the founder of Dartmouth College, Eleazor Wheelock, created a charitable trust of funds owned and procured by himself and devised in trust to named trustees to continue the existence and uses of Dartmouth College. No funds were given to Dartmouth College by the charter; rather, such funds were given to the trustees as the sole legal owners of all the property acquired under the charter. *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 517, 553–54, 4 L.Ed. 629 (1819). Thus, Dartmouth maintains some of the attributes of a corporation, such as continuity of existence and the ability to sue and be sued, but is not incorporated in any state, does not issue stock, does not have a board of directors, and does not have shareholders.

us to undertake to enlarge by construction an exception in a statute restricting federal jurisdiction.

*Id.* at 913. As in *Kresberg,* this Court will not interpret the term "corporation" in a statute restricting federal jurisdiction as encompassing a trust with some of the attributes of a corporation. Accordingly, Dartmouth can not be deemed a "corporation" for purposes of section 12.

■ Since nationwide service of process under section 12 does not extend to Dartmouth, plaintiff must turn to New York's long arm statute to provide a basis for personal jurisdiction. *See Grosser v. Commodity Exchange,* 639 F.Supp. 1293, 1305–1306 (S.D.N.Y.1986). When a question of personal jurisdiction is decided without a full evidentiary hearing, plaintiff need make only a *prima facie* showing that jurisdiction exists. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). However, where, as here, there has been substantial discovery on the jurisdictional issue, plaintiff is required to demonstrate jurisdiction by a preponderance of the evidence. *Grill v. Walt Disney Co.,* 683 F.Supp. 66, 67–68 (S.D.N.Y.1988); *see Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984). New York Civil Practice Rules ("CPLR") §§ 301 and 302 set forth the bases upon which New York courts may assert jurisdiction over a non-resident person or foreign corporation. Plaintiff argues that this Court has jurisdiction over Dartmouth pursuant to CPLR §§ 301, 302(a)(1), 302(a)(3), and under a theory of co-conspiracy.

■ Neither Dartmouth, nor plaintiff, has raised the issue of whether Dartmouth, a trust chartered by King George III, can be subject to jurisdiction for "doing business" under CPLR § 301. Although the "doing business" basis of jurisdiction normally applies to corporations, New York courts have subjected non-corporate entities, including individuals, to jurisdiction under the "doing business" test. *See Diskin v. Starck,* 538 F.Supp. 877, 880 (E.D.N.Y.1982); *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 460, 434 N.E.2d 692, 697

(1982); *ABKCO Indus., Inc. v. Lennon,* 52 A.D.2d 435, 384 N.Y.S.2d 781, 784 (1st Dep't 1976). The rationale underlying CPLR § 301 supports the application of the "doing business" test to a wide range of business entities:

> While ordinarily it is a corporate defendant that will be subject to jurisdiction for "doing business" under CPLR 301, the "doing business" test can be legitimately applied to all business entities, such as partnerships and unincorporated associations, and can even be applied to non-resident individuals.... Moreover, equal treatment of defendants is desirable since the form of organization by which a defendant does business is irrelevant to any policy governing acquisition of jurisdiction.... [R]ecent well reasoned authority has imposed general jurisdiction in New York even as to non-corporate defendants "doing business" in New York.

*Klinghoffer v. S.N.C. Achille Lauro,* 739 F.Supp. 854, 862 (S.D.N.Y.1990) (quoting 1 Weinstein, Korn & Miller, New York Civil Practice ¶ 301.15, at 3–30 to 31 (footnotes omitted; citing *ABKCO* and *Laufer* )). As a trust chartered by King George III, Dartmouth has the ability to conduct business and engage in substantial commercial activity in New York just like any other business entity. Accordingly, CPLR § 301's "doing business" basis of jurisdiction is sufficiently broad to encompass Dartmouth.

A defendant is subject to jurisdiction under CPLR § 301 if it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Grill v. Walt Disney Co.,* 683 F.Supp. at 68 (citing *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) (quoting *Simonson v. Int'l Bank,* 14 N.Y. 2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964))). A defendant is "doing business" within the meaning of CPLR § 301 if it does business in this state "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y.

259, 267, 115 N.E. 915, 917 (1917)). Whether a defendant may be deemed to be present by virtue of its doing business in the jurisdiction depends upon the application of a "simple and pragmatic" test. *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1044 (S.D.N.Y.1987) (citing *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 432, 260 N.Y. S.2d 625, 628–29, 208 N.E.2d 439, 441 (1965)).

In applying this "simple and pragmatic" test under CPLR § 301, New York courts have focused on a number of factors including: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and property in the state; and the presence of employees of the foreign defendant in the state. *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985) (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 853, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967)). New York courts also look to whether defendant lists a telephone number in the state. *Rolls–Royce Motors, Inc.*, 657 F.Supp. at 1044.

■ It is well settled that "mere solicitation of business by a foreign corporation in New York is an insufficient basis for the exercise of personal jurisdiction." *Hoffritz For Cutlery, Inc.*, 763 F.2d at 59; *see Rolls–Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1044–45 (S.D.N.Y. 1987). When there are activities of substance in addition to solicitation, however, there is presence and therefore jurisdiction. *Grill v. Walt Disney Co.*, 683 F.Supp. at 68. This theory of jurisdiction has become known as the "solicitation plus" doctrine. *See Asquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970). Cases which find jurisdiction under the "solicitation plus" doctrine "have involved either financial or commercial dealings in New York, either personally or

through an agent." *Id.* at 212 (citations omitted).

■ Dartmouth is not licensed to do business in New York, it maintains no offices in New York, and it does not list a phone number in New York. Nonetheless, Dartmouth engages in a continuous and systematic course of conduct sufficient to warrant a finding that it is doing business in New York. Dartmouth College actively solicits students in New York by sending representatives to approximately 44 secondary schools in the state a year.[2] In addition to this solicitation, Dartmouth has engaged in substantial commercial activity in the state. Dartmouth has a banking relationship with Chase Manhattan Bank that dates back to at least 1982. Since that time, Dartmouth has maintained at least two accounts in Chase, with a balance in one account as high as $14,487,051.88 in 1987. Further, from 1982 to 1987, Dartmouth has issued bonds in New York through Goldman Sachs on at least four separate occasions. Dartmouth also owns real property in New York—a future remainder interest in a piece of residential real estate on Long Island worth approximately $65,000.[3] Accordingly, Dartmouth has sufficient contacts with New York to establish that it engaged in a continuous and systematic course of "doing business" sufficient to warrant a finding of its presence in New York for purposes of jurisdiction.

## B. Venue

The moving defendants argue that venue is not appropriate under either the special venue provisions of the Clayton Act found in section 12, or the general federal venue provision found in 28 U.S.C. § 1391(b). It is now well settled that the provisions of 28 U.S.C. § 1391(b) "are supplemental to—not superseded by—the special antitrust venue statute." *Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1313 (S.D. N.Y.1986); *General Electric v. Bucyrus–*

---

**2.** Dartmouth alumni also conduct periodic interviews of prospective students in New York as a courtesy to the school.

**3.** There is a "Dartmouth Club of New York." However, the club is located within the Yale Club and is not subsidized by or formally affiliated with the College.

*Erie Co.,* 550 F.Supp. 1037, 1040 & n. 3, 1042 (S.D.N.Y.1982). Thus, venue in this district may be authorized under either section 12 or under the general federal venue provisions of 28 U.S.C. § 1391(b).

Section 1391(b) provides that a federal question case may be maintained in the forum where all defendants reside.[4] Pursuant to section 1391(c), a corporation is deemed to "reside" in any district "in which it is subject to personal jurisdiction at the time the action was commenced." Wesleyan and Williams are corporations who are, and were at the time this action was commenced, subject to jurisdiction in this action under section 12 of the Clayton Act. They are therefore deemed to "reside" in this district pursuant to section 1391(c).

■ To be sure, although a trust like Dartmouth is not a "corporation" for purposes of section 12 of the Clayton Act, it is a "corporation" for purposes of section 1391(c). That section's reference to "corporations" has been liberally construed to include trust funds and other entities such as voluntary associations and partnerships. *Hock v. Pacific Mutual Life Ins. Co.,* No. 88–3471, slip op. at 8 (D.D.C. May 15, 1989); *see, e.g., Denver & Rio Grande Western R.R. Co. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 559–62, 87 S.Ct. 1746, 1748–50, 18 L.Ed.2d 954 (1967); *Penrod Drilling Co. v. Johnson,* 414 F.2d 1217, 1220 (5th Cir.1969). Because Dartmouth is a "corporation" for purposes of section 1391(c) and was subject to personal jurisdiction at the time this action was commenced, Dartmouth is deemed to "reside" in this district pursuant to section 1391(c). Accordingly, all of the moving defendants are deemed to reside in this district and venue is therefore appropriate under section 1391(b). *See Obee v. Teleshare, Inc.,* 725 F.Supp. 913, 916–17 (E.D.Mich.1989).

---

4. On December 1, 1990, President Bush signed into law the Judicial Improvements Act of 1990, Pub.L. No. 101–650. Section 311 of title III revised section 1391(b). The provision making venue proper "where all defendants reside" was changed to read that venue is proper "where any defendant resides, if all defendants reside in the same district." The term "reside" is defined for purposes of section 1391(b) in section 1391(c), which was not changed by the 1990 Judicial Improvements Act. Venue is appropriate in this action under both the language of section 1391(b) when this action was filed and the revised section 1391(b).

### III. CONCLUSION

Defendants' motions pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) to dismiss this action against them for lack of personal jurisdiction and improper venue, and, in the alternative, pursuant to 28 U.S.C. § 1406 to transfer this action to a district in which it might have been brought are denied.

SO ORDERED.