**In re TRITON LIMITED SECURITIES LITIGATION.**

No. 5:98CV256.

United States District Court,
E.D. Texas,
Texarkana Division.

Sept. 29, 1999.

U. Seth Ottensoser, Keith M. Fleischman, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Damon Young, John Michael Pickett, Young & Pickett, Texarkana, TX, for D.H. Lee, Jr., Ken Bortner.

Roger F. Claxton, Kilgore & Kilgore, Dallas, TX, U. Seth Ottensoser, Keith M. Fleischman, Steven G. Schulman, Milberg

Weiss Bershad Hynes & Lerach, LLP, New York City, for North River Trading Co., L.L.C., Richard L. Zorn, Elizabeth Clofine.

James N. Haltom, George L. McWilliams, Richard Andrew Adams, Patton Haltom Roberts McWilliams & Greer, LLP, Texarkanna, TX, Nelson James Roach, Charles Cary Patterson, Jeffrey John Angelovich, Bradley Earl Beckworth, Jason Brandt Stephens, Daingerfield, TX, U. Seth Ottensoser, Keith M. Fleischman, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, for D.H. Lee, Jr.

U. Seth Ottensoser, Keith M. Fleischman, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Lance Lee, Damon Young, Young & Pickett, Texarkana, TX, for Richard Strauss, Michael Nmn Brown.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Before the Court is the Defendants' Motion To Dismiss for Improper Venue or Transfer Case to the Northern District of Texas (Doc. # 19).[1] On April 27, 1999, the Court held a hearing on the Defendants' motion. After considering the motion, the response, additional filings, and the arguments of counsel at the hearing, the Court finds the following.

## I. BACKGROUND

This is a securities fraud case. Seeking class certification, the named Plaintiffs are persons who purchased common stock of Triton Energy, Ltd. ("Triton") and who seek to recover damages caused by Triton's alleged violations of federal and common law. Generally, the Plaintiffs allege that Triton is an industrial oil and gas exploration and production company. On March 30, 1998, Triton announced that it was putting itself up for sale. It was reported that interest in Triton was heavy, with over thirty potential bidders examining Triton's corporate books. Triton stated that it would accept sealed bids through June 30, 1998. Plaintiffs allege that Triton's stock increased twenty percent between March 30 and May 7 of 1998.

Between July 14, 1998, and July 16, 1998, Triton's stock began to drop sharply. On Friday, July 17, 1998, Triton announced that its bidding process had been unsuccessful, that it would not be selling the company, and that it had accepted a bid from Atlantic Richfield Co. to buy one-half of its interest in its Southeast Asia gas field. Triton's stock price lost approximately one-third of its value as result of the announcement.

Plaintiffs allege that Triton carried out a plan, scheme, and course of conduct which was intended to deceive the investing public, artificially inflate and maintain the market price of Triton securities, and cause the Plaintiffs and purported class members to purchase Triton securities at inflated prices. Plaintiffs allege that Triton employed devices, schemes, and artifices to defraud and made untrue statements of material fact and/or omitted material facts necessary to make the prior statements not misleading. Plaintiffs allege Triton performed these acts through interstate commerce and/or mail.

Plaintiffs allege this action arises under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)), and the rules and regulations promulgated thereunder, including SEC Rule 10b–5 (17

---

1. On November 10, 1998, the Court consolidated the civil actions numbered 5:98CV263, 5:98CV275, 5:98CV279, 5:98CV281, 5:98CV285, 5:98CV307, and 5:98CV320 into one cause of action under the number of the first filed cause, Civil Action No. 5:98CV256. This Order applies to all of the Defendants' motions to dismiss and transfer venue filed in all of the above-numbered cases prior to consolidation. Those are as follows: 5:98CV263—Doc. # 17; 5:98CV275—Doc. # 13; 5:98CV279—Doc. # 12; 5:98CV281—Doc. # 13; 5:98CV285—Doc. # 12; and 5:98CV307—Doc. # 11.

C.F.R. § 240.10b–5). Plaintiffs assert venue is proper in this District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(a), (b), and (d). Plaintiffs allege that the acts giving rise to the violations complained of occurred or caused injury in this District, including SEC filings and other public statements disseminated regarding Triton during the class period.

Defendants move to dismiss these causes of action for improper venue and in the alternative to transfer venue to the Northern District of Texas. Defendants argue that pursuant to the applicable venue rules provided by the Exchange Act, venue is not proper in the Eastern District. As such, Defendants contend that pursuant to 28 U.S.C. § 1406(a) the cases should be dismissed or transferred to the Northern District of Texas. Alternatively, pursuant to 28 U.S.C. § 1404, the Defendants assert the Court should transfer this action to the Northern District of Texas for the convenience of the parties, witnesses, and in the interest of justice.

The evidence provided to the Court establishes the following. Triton is a Cayman Islands corporation. The Defendants maintain no offices in this District. Triton's United States offices are headquartered in Dallas, which is in the Northern District of Texas. Triton's officers are located in Dallas. All press releases, announcements, and other media statements applicable to this case were issued from Dallas. Plaintiff D.H. Lee, Jr., purchased 1,000 shares of Triton stock at a price of $29 ⅟₁₆ per share on July 16, 1998, while in Texarkana, which is in the Eastern District of Texas. On July 14 and 15, 1998, Robert Hillier purchased a total of 900 shares of Triton stock from his home in Smith County, Texas, which is within the Eastern District. Robert Hillier is not a named plaintiff.

Although Robert Hillier is not a named plaintiff, the evidence reveals that the March 30, 1998, press release from Triton was accessed and read by him within the Eastern District of Texas via the Internet. The March 30, 1998, press release lies at the heart of the majority of Plaintiffs' claims of fraud against the Defendants. In that press release, Triton announced that "strategic alternatives under consideration may include the sale or farmout of a portion or all of the Company's interest in Block A–18 of the Malaysia–Thailand Joint Development Area in the Gulf of Thailand, the sale of a portion or all of the Company's interest in the Cusiana and Cupiagua oil fields in Colombia, or both." Further, the press release contains quotes directly from Defendant Thomas G. Finck. Specifically, Mr. Finck states, "We have a substantial, valuable resources base that is only partially developed and amounts to about one billion barrels of equivalent oil, or 27.3 barrels per share.... We believe the stock market has not yet fully recognized the value of these assets."

In addition to the March 1998 press release, Plaintiffs have provided the Court with a *Reuters* news article dated the twelfth of May. In that article Mr. Finck states that his "plans to sell key assets or the entire company has drawn 'strong' interest from industry giants." In addition, Mr. Finck indicated that due to high industry interest in this sale, Triton opened more data rooms in London. However, he stated the data rooms would be closed by the end of May with bids due in by late June and the company's management would make a decision in July.

Plaintiffs have also produced other press releases from Triton. All of the press releases from Triton contain an Internet website address: www.tritonengergy.com. However, as to these press releases, there is no evidence that they were received in the Eastern District of Texas.

## II. DISCUSSION

### A. 15 U.S.C. § 78aa

The Securities Exchange Act provides liberal venue rules to allow plaintiffs who are "subject to nationwide securities

fraud schemes to vindicate their rights without having to resort to fragmented litigation." *In Re Towner Petroleum Company Securities Litigation, MDL 607,* 1986 WL 290, at *12 (E.D.Pa. June 30, 1986). However, Defendants assert that Plaintiffs cannot establish facts sufficient to demonstrate that this Court has venue over this action. Defendants argue that no Triton office, officer, or business was present in or conducted within the Eastern District. Defendants argue that Plaintiffs' claims establish that venue is proper in the Northern District. Further, Defendants argue that no act of material importance to the consummation of the alleged scheme occurred within the Eastern District as required by 15 U.S.C. § 78aa.

▮ Plaintiffs assert that because Triton is an alien defendant and can be sued in any district, venue in the Eastern District is proper for all defendants. Triton is a Cayman Islands corporation and as such is subject to the provision of the general federal venue statute which states that an alien may be sued in *any* district. 28 U.S.C. § 1391(d). As with any alien defendant, § 1391(d) applies "wholly outside the operation of all the federal venue laws, general and special." *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 714, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). However, Defendants Thomas G. Finck and Peter Rugg are not aliens. When an alien and a non-alien are joined as defendants, "venue for the entire action is proper in any district where it is correct as to the non-alien defendant." *Japan Gas Lighter Assoc. v. Ronson Corp.,* 257 F.Supp. 219, 225 (D.N.J.1966); *see also Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,* 1984 WL 2929, at *3 (D.D.C. Jan.24, 1984). Accordingly, § 1391(d) does not establish venue in this district.

▮ The Court next turns to § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Section 78aa states in pertinent part:

Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

The test for a *civil action* is "that applicable to a criminal proceeding under the Act which 'may be brought in the district wherein any act or transaction constituting the violation occurred.'" *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 204 (5th Cir.1960) (quoting § 78aa).

Plaintiffs argue that venue is proper in the Eastern District because of the nationwide service of process provision of § 78aa. "Once a case is filed in an appropriate district under § 78aa, the statute gives the district court the authority to serve the defendants nationwide." *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1257 (5th Cir.1994). As such, "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Id.* at 1258. The Court agrees with the Plaintiffs that it has personal jurisdiction over the Defendants.

Plaintiffs next argue that because the Court has personal jurisdiction over Triton pursuant to § 78aa, it is thus a resident of this District in accordance with 28 U.S.C. § 1391(b) and (c). Section 1391(b) provides in pertinent part that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the

same State." Section 1391(c) states that a "corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." As such, Plaintiffs argue that because personal jurisdiction exists as to Triton in this District, then Triton's residency exists in this District. Further, Defendants have admitted that Peter Rugg and Thomas G. Finck are residents of the State of Texas. Therefore, all Defendants are residents of the State of Texas, and venue in the Eastern District is proper pursuant to § 1391(b).

Defendants argue that Plaintiffs cannot mix the provisions of the general venue statute with § 78aa. Defendants assert that Plaintiffs must independently satisfy venue requirements of § 78aa. As a "general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes." *Go–Video, Inc. v. Akai Elec. Co., Ltd.* 885 F.2d 1406, 1409 (1989). Further, the issue was squarely addressed in *Icon Industrial Controls Corp. v. Cimetrix, Inc.*, 921 F.Supp. 375 (W.D.La.1996). In *Icon*, the plaintiff brought an antitrust action against four defendants wherein the defendants moved to dismiss for lack of personal jurisdiction and improper venue. Plaintiffs contended that venue was proper pursuant to a combined application of § 12 of the Clayton Act (15 U.S.C. § 22) and the general venue provisions of 28 U.S.C. §§ 1391(b) and (c). The defendants in *Icon* argued that the worldwide service provision did not apply to all anti-trust cases, but only to those antitrust cases where the special venue provisions set forth in the first clause of § 12 were met. *Icon*, 921 F.Supp. at 378.

In a detailed analysis of the personal jurisdiction question, the district court in *Icon* began with an examination of the worldwide service of process language in § 12 of the Clayton Act. The pertinent language of that section is as follows, ". . . and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

15 U.S.C. § 22. Citing the Ninth Circuit case, *Go–Video, Inc.*, the *Icon* court found there was "no indication in the legislative history that Congress intended to restrict the availability of worldwide service of process to those cases governed by the special venue rules contained in § 12." *Icon*, 921 F.Supp. at 380. In fact, the district court in *Icon* found that § 12 of the Clayton act could be supplemented by 28 U.S.C. §§ 1391(d) and 1391(c). *Icon*, 921 F.Supp. at 380 ("Nor is there any language in *Go–Video* which suggests that § 1391(d) is the *only* statutory rule of venue that supplements the venue rules provided by Section 12. . . .").

Other district courts have agreed with this interpretation of the Clayton Act's worldwide service of process provision in relation to the general venue statutes. *See Paper Systems Inc. v. Mitsubishi Corp.*, 967 F.Supp. 364, 366–67 (E.D.Wis.1997) (stating as to 15 U.S.C. § 22, "[T]he worldwide service of process clause should stand on its own, independent from the venue clause. Paper systems may rely on § 22's service of process provision without satisfying § 22's venue provisions. Instead, Paper Systems may rely on 28 U.S.C. § 1391(d) for venue. . . ."); *see also Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 197–201, 255–56 (W.D.N.Y.1997) ("In applying the antitrust venue provisions, courts have concluded that Congress' intent was to enlarge the plaintiff's choice of forum by reading the Clayton Act's venue provisions as supplemental to, rather than superseding, the general venue provisions."); *see also Kingsepp v. Wesleyan University*, 763 F.Supp. 22, 28 (S.D.N.Y.1991) ("Thus, venue in this district may be authorized under either section 12 or under the general federal venue provisions of 28 U.S.C. § 1391(b)."). As such, the *Icon* court found it had personal jurisdiction over the defendants.

Turning to the issue of venue, the *Icon* court dealt with the exact argument presented to this Court. The *Icon* plaintiff contended that venue was proper pursuant

to §§ 1391(b) and (c) because the residency of the corporate defendants was determined by personal jurisdiction under Section 12 of the Clayton Act. The district court agreed by stating, "Having already determined that the defendants are subject to personal jurisdiction in Louisiana, and that the venue provisions of Section 12 of the Clayton Act are not exclusive, the court agrees that § 1391(c) provides a basis for venue." *Icon*, 921 F.Supp. at 382. Again, the Western District of Louisiana is not alone in this application of the Clayton Act in combination with §§ 1391(b) and (c). *See Kingsepp*, 763 F.Supp. at 28 ("Wesleyan and Williams are corporations who are, and were at the time this action commenced, subject to jurisdiction in this action under section 12 of the Clayton Act. They are therefore deemed to 'reside' in this district pursuant to section 1391(c)."); *see also Daniel*, 988 F.Supp. at 273 ("In this case, the court has found, under the nationwide contacts analysis authorized by Clayton Act Section 12, that each of the defendant corporations has sufficient contacts with the United States to be subjected to personal jurisdiction.... Therefore, as each of these defendants have sufficient contacts with this district for personal jurisdiction purposes and have been properly served, they also have sufficient contacts with this district for purposes of venue.... Each of these Defendants as corporations are thus deemed to reside in this district for purposes of Section 1391(c)").

The Court finds the above arguments persuasive and sound when comparing the similar provision of 15 U.S.C. § 78aa with the general venue provisions of §§ 1391(b) and (c). *See Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 n. 10 (2d Cir.1972) (stating as to § 27 Securities Exchange Act, "This rather ineptly worded provision and the similar one in § 22(a) of the 1933 Act appear to have been modeled on § 12 of the Clayton Act"). By reaching the same conclusion regarding the service of process provision of § 78aa, the Court has personal jurisdiction over Triton. Pursuant to 28 U.S.C.

§ 1391(c), Triton is a resident of the Eastern District of Texas. Defendants Rugg and Finck are residents of the State of Texas. Therefore, pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District because "any" defendant, Triton, resides in this District and all defendants reside in the same state.

■ However, the Court also finds that venue is proper in the Eastern District pursuant to 15 U.S.C. § 78aa. As stated above, § 78aa provides that any suit to enforce liability under the 1934 Act may be brought in the district where any act or transaction constituting the violation occurred. As the Fifth Circuit has stated, "the 'act' contemplated by the statute need not be crucial, nor must 'the fraudulent scheme be hatched in the forum district.'" *Hilgeman v. National Ins. Co. of America*, 547 F.2d 298, 301 (5th Cir.1977) (quoting, *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204 (5th Cir.1960)). Rather, the jurisdictional act must be "'of material importance to the consummation of the scheme.'" *Id.* However, the defendant need not be "physically present in the forum district nor need he commit more than a single act in the district if that act is important to the consummation of the scheme." *Id.* at 302 n. 11. As the *Hilgeman* court found, "[T]here can be little doubt that the sending of the premium payment notice into Alabama was a step of material importance to that year's consummation of the ongoing scheme, i.e., extracting an annual payment from the plaintiff." *Id.* at 302. Further, the Court may look beyond the Complaint in resolving venue issues.

■ Defendants argue that no acts occurred in the Eastern District. Further, they argue that evidence submitted by one Plaintiff cannot be considered for venue determinations as to the others. In addition, Defendants argue that the Mr. Hillier's evidence cannot be considered by this Court because he is a non-party.

Similar arguments were advanced by defendants in the case of *In Re Towner Petroleum*, 1986 WL 290 at *12 and *14. In *In Re Towner Petroleum*, thirteen separate cases filed in various federal district courts were consolidated in one district for multidistrict litigation purposes. The court noted that, "All of the actions consolidated in this multidistrict litigation concern a single, allegedly fraudulent scheme to market securities nationally." *Id.*, 1986 WL 290, at *11. One of the defendants argued that each plaintiff "must show venue and personal jurisdiction with respect to his or her own claim and that each plaintiff must establish an act or transaction relating to his or her own purchase of securities within this district in order to come within the venue requirements of ... 15 U.S.C. § 78aa." *Id.* at *14. The plaintiffs contended that venue and personal jurisdiction were proper for one set of plaintiffs' claims on the basis of acts or transactions in the district relating to any one of the plaintiffs' claims. *Id.*

After discussing a previous ruling wherein the district court found that one of the defendants had transacted business in and was a resident of the district for venue purposes, the district court noted that in one particular plaintiffs' case individual defendants were alleged to have conspired to defraud investors across the nation. As "part of that scheme, TPC, under the control of the individual defendants, distributed the Prospectus and sold securities in this district." *Id.* Because of the "broad reach of the securities law," and in "accordance with Congress' intention to grant securities fraud victims the means to redress injuries perpetrated by nationwide fraud scheme without resort to fragmented litigation," the district court held that venue was proper pursuant to § 27 of the Exchange Act for all of the plaintiffs' claims joined in the one action. *Id.* As the district court stated:

The acts or transactions in this district that relate to the claims of John T. Synnestvedt and Lockhart Associates were part of a single, allegedly fraudulent scheme to market securities throughout the nation. All of the Synnestvedt plaintiffs allegedly were defrauded in the same scheme. Although the plaintiffs purchased the partnership shares through separate brokers in different parts of the country, the D & O defendants' involvement in the allegedly fraudulent scheme presumably was uniform throughout the country. The venue provision in section 27 of the Exchange Act was purposely drafted to allow defrauded investors adequate means to redress harm caused by nationwide securities fraud, and courts have not hesitated to give section 27 of the Exchange Act a broad swath and have sustained plaintiff's choice of venue even though based on only one act or acts peripheral to the alleged violations.... In order to provide an adequate means for defrauded investors to obtain relief against the perpetrators of nationwide securities fraud, the venue provision of section 27 of the Exchange Act should be interpreted to allow an investor defrauded in one federal district to join in a suit with another investor defrauded in another district against common defendants utilizing a common scheme to defraud.

*Id.* at *14 (citations omitted). In addition, the district court stated, "There is no dispute, however, that venue is proper in this district as to John T. Synnestvedt and Lockhart Associates. This action, therefore, could have been brought in this district as a class action, so that the broad interpretation of the securities law venue provision does not allow any further forum shopping than is already permitted under other procedural devices." *Id.* at *15.

In the present cases, the evidence presented by the Plaintiffs establishes that information regarding the desirability of owning Triton's stock did enter the Eastern District of Texas and was relied upon by persons in the Eastern District of Texas. Although Mr. Hillier is not a named

party, his evidence shows that the press releases at issue in this case were sent directly into the Eastern District of Texas. *See Kogok v. Fields,* 448 F.Supp. 197, 199 (E.D.Pa.1978) (stating, "Venue is based on the mailing of proxy statements, quarterly and annual reports, and prospectuses by TDA to *non-parties* who reside in the Eastern District of Pennsylvania" and holding the materiality test was satisfied for venue in that district) (emphasis added). Triton publicly announced that "strategic alternatives under consideration may include the sale or farmout of a portion or all of the Company's interest in Block A–18 of the Malaysia–Thailand Joint Development Area in the Gulf of Thailand, the sale of a portion or all of the Company's interest in the Cusiana and Cupiagua oil fields in Colombia, or both." That announcement was purposefully placed in the Eastern District. Further, Defendant Thomas G. Finck's statement, "We have a substantial, valuable resources base that is only partially developed and amounts to about one billion barrels of equivalent oil, or 27.3 barrels per share.... We believe the stock market has not yet fully recognized the value of these assets," entered this District. Additionally, a nationally printed *Reuters* news story spoke of the Defendants' representations regarding the value of the company. *See Oxford First Corp. v. PNC–Liquidating Corp.,* 372 F.Supp. 191, 197–98 (E.D.Pa.1974) (venue proper in district when defendants made statements to third party that defendants knew or should have known would be read and relied upon by plaintiffs in district). These representations form the basis for the Plaintiffs' claims of the alleged misrepresentations and the single, allegedly fraudulent scheme to market securities nationally. Finally, Mr. D.H. Lee, a named Plaintiff, purchased 1,000 shares of Triton stock in the Eastern District during the time when the alleged scheme occurred.

The *Hilgeman* case requires the defendant's act within this district to be of "material importance to the consummation of the scheme." As in *Hilgeman,* this Court views the sending of press releases into the Eastern District and the subsequent sale of Defendant company's stock in the Eastern District to be the very alleged fraudulent scheme that the Plaintiffs complain. Therefore, venue is proper in this District.

## B. The Co-Conspirator Theory

The "co-conspirator" theory provides that "in a multi-defendant securities proceeding, where a common scheme of acts or transactions to violate the securities act is alleged, if venue is established for any of the defendants in the forum district there is sufficient justification to establish venue as to the other defendants, even in the absence of any contact or substantial contact by any one defendant within that district." *Hilgeman,* 547 F.2d at 302 n. 12. The "co-conspirator" theory has been adopted by the Fifth Circuit. *Id.; see also Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1318 (9th Cir.1985) ("The strong policy favoring the litigation of related claims in the same forum supports the application of a co-conspirator venue theory in actions based upon violations of federal securities statutes"). This Court has found that venue as to all Defendants is proper in this District pursuant to § 1391(b). Further, the Court finds that venue is proper in this District as to Triton and Defendant Finck because of the statements contained in the press release which entered this District. In addition, using the "co-conspirator" theory, venue is proper as to all Defendants because of the common scheme or acts of any one within this District.

## C. 28 U.S.C. § 1404

As an alternative position the Defendants urge the Court to transfer this action to the Northern District of Texas under 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil ac-

tion to any other district or division where it might have been brought.

■ The purpose of § 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See State Street Capital Corp. v. Dente*, 855 F.Supp. 192, 197 (S.D.Tex. 1994). The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer of venue according to "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting, *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

■ The party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). "[B]efore this Court can order a [convenience] transfer, the defendants must carry a strong burden to prove that [the convenience] factors clearly favor such a change." *TV–3, Inc. v. Royal Ins. Co. of America*, 28 F.Supp.2d 407, 411 (E.D.Tex. 1998). Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition or otherwise. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973) (vacating district court's convenience transfer that was based not on supported evidence but only on "facts and conclusions asserted in defendants' motion"); *see also Job Haines Home for the Aged v. Young*, 936 F.Supp. 223, 228 (D.N.J.1996) ("In reviewing the factors which weigh for or against [a convenience] transfer, this Court must look to facts which are a matter of record, not merely to assertions in the attorneys' briefs").

■ The decision to transfer venue for the convenience of the parties and witnesses, in the interest of justice, is within the sound discretion of the district court. *Rich v. Southern Gulf Operators*, 879 F.Supp. 49, 51 (E.D.Tex.1995). In determining whether an action should be transferred under § 1404(a), the court examines factors which fall into two groups: (1) those relating to the convenience of the litigants, and (2) those relating to the public interest in the fair and efficient administration of justice. *Mortensen v. Maxwell House Coffee Co.*, 879 F.Supp. 54, 56 (E.D.Tex.1995) (citing *Walter Fuller Aircraft Sales v. Republic of Philippines*, 965 F.2d 1375, 1389 (5th Cir.1992)).

■ The convenience factors consist of (1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted. *Id.* The public interest factors consist of (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

### 1. Plaintiff's Choice of Forum

■ A plaintiff's right to choose a forum is "well-established," and his choice is usually highly esteemed. *Texas Instruments, Inc. v. Micron Semiconductor*, 815 F.Supp. 994, 996 (E.D.Tex.1993). The plaintiff's choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." *Young v. Armstrong World Indus.*, 601 F.Supp. 399, 401 (N.D.Tex.1984) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)). Further, the judicial system inherently provides a plaintiff with his choice of forum:

The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261–62 (5th Cir.1983).

 The Defendants contend that because no Plaintiff resides in the Eastern District, the Plaintiffs' choice of forum is subject to close scrutiny. Further, Defendants argue that Plaintiff's Response ignores that the choice of forum for class actions cannot claim the deference otherwise given to Plaintiffs. *See, e.g. Job Haines*, 936 F.Supp. at 228 (stating, "[T]he weight of authority holds that in class actions . . . the class representative's choice of forum is entitled to lessened deference"). However, even though the Plaintiffs' choice of forum gets lessened deference, it is still at least a factor which should be considered in a convenience transfer analysis. *See, e.g. Georgouses v. NaTec Resources, Inc.*, 963 F.Supp. 728, 730 (N.D.Ill.1997) (plaintiff's choice of forum in class action is "simply one factor among many to be considered").

In fact, this was the approach recognized in *Job Haines*, one of the cases relied upon by the Defendants for the proposition that the plaintiffs' choice of forum in this situation is entitled to lessened deference. *Job Haines*, 936 F.Supp. at 228. The court, after stating the plaintiff's choice in the class action was entitled to lessened deference, went on to recognize authority holding that "the 1404(a) factors are still balanced by the court in making a transfer determination, and the balance must tip strongly in favor of trans-fer before disturbing the plaintiff's choice." *Id.*

The named Plaintiffs have obviously chosen the Eastern District of Texas as the forum in which they wish to pursue their claims. At a minimum, this choice is a factor which weighs against transfer. Additionally, the Court is inclined to at least give some deference to this choice, especially in light of the fact that the venue provisions of the securities laws are intended to give plaintiffs liberal choice in their selection of a forum. *See Securities Investor Protection*, 764 F.2d at 1317.

## 2. Convenience and Associated Costs of Attendance of Witnesses

 The Defendants argue because a large number of the likely witnesses in this case reside in the Northern District of Texas, the Defendants would not be able to compel the appearance of material non-party witnesses, or insure the appearance of voluntary witnesses at trial. Defendants aver that the testimony of non-party material witnesses is crucial in a securities case, and non-party officers, directors, and executives of Triton Energy would be called to testify at trial as to the events alleged in Plaintiffs' complaints. As such, if these witnesses cannot be compelled to appear, the Defendants would be forced to present their defense through the use of deposition testimony. Defendants further assert that a majority of the witnesses with knowledge of the matters alleged in Plaintiffs' complaints are located in the Northern District of Texas. Consequently, Defendants argue that all of the parties would bear the significant cost of obtaining the presence of such witnesses in the Eastern District. Additionally, Defendants assert that their material witnesses on the key issues would be Triton Energy officers, directors, executives, and employees and the named Plaintiffs.

The mere assertions initially offered in Defendants' Motion are wholly insufficient to tip this factor in favor of the Defendants. As the party seeking transfer, De-

fendants must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover. *Fletcher v. Southern Pacific Transp. Co.*, 648 F.Supp. 1400, 1402 (E.D.Tex.1986) (citing *Young*, 601 F.Supp. at 401–402). Defendants provide by way of affidavit in their Reply a listing of the witnesses which may be called to trial. Defendant Rugg specifically identifies only one non-party witness who resides in Dallas, Texas, who will be called to testify. While Defendant Rugg states that other persons from engineering and accounting firms in Dallas will be called to testify about estimates of Triton's reserves and Triton's financial statements, no further information is provided to show these witnesses will be inconvenienced or burdened by Defendants hiring them to testify in the Eastern District. The Court assumes from the evidence provided by the Defendants that these witnesses will appear to testify in *any* court on behalf of the Defendants because they have been retained to do so.

In addition, Mr. Rugg lists five Triton employees from Dallas, Texas, area who will be called by the Defendants. "It is the convenience of non-party witnesses, rather than of employee witnesses, however, that is the more important factor and accorded greater weight." *Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994). This Court is not persuaded that the Defendants will have a difficult or burdensome time in producing its own employees for testimony in the Eastern District. The Court finds the Defendants have failed to carry their burden in showing that this prong of the analysis weighs in favor of transfer.

### 3. Relative Ease of Access to Proof

The Defendants assert that this factor favors venue in the Northern District of Texas because Triton Energy's headquarters are located in Dallas, a majority of the documents that appear to be relevant to the Plaintiffs' claims are in Dallas, and no documents are located in the Eastern District. Defendants, however, fail to show that these documents are so voluminous that they would be difficult to transport. Therefore, the Court does not consider this as an important factor in the transfer analysis. *See Met–L–Wood Corp. v. SWS Indus., Inc.* 594 F.Supp. 706, 710 (N.D.Ill.1984) (the location of documents is not an important factor "unless documents are so voluminous that their transport is a major undertaking"); *see also Arrow Electronics, Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y. 1989) (denying transfer into district where defendant's documents were located because doing so would merely shift the transportation burden from the defendant to the plaintiff). Additionally, the location of documents is entitled to little weight in this analysis, given the ease with which they can now be copied. *See* 15 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3853 (1986). Accordingly, this factor does not weigh in favor of transfer.

### 4. Possibility of Delay and Backlog of Cases

The Defendants assert that the relative congestion of the dockets in the Eastern and Northern District also favors transfer to the Northern District. Defendants provide a report of the Administrative Office of the United States Courts in support of their motion. The report is based upon the number of cases, termination rates, and cases filed from the years 1996 to 1997. The Defendants' evidence addresses district wide numbers. However, in September of this year, this Court will actually experience a direct loss of a significant number of cases due to the appointment of a new federal district court judge in the Eastern District of Texas. As a result, this Court will have the Texarkana Division solely and will be able to move cases along at a much more rapid speed. Accordingly, this factor weighs against transfer.

### 5. Place of the Alleged Wrong

Defendants assert that the place of the alleged wrong, Dallas, Texas, favors transfer. However, in this securities fraud case, the Court finds that the place of the alleged wrong is not limited to the Northern District of Texas due to the nationwide public dissemination of information which forms the basis of this suit.

### 6. Community Interest

Defendants argue that the citizens of Dallas County have the greater interest in correcting an alleged wrong in their community. The Court finds, however, that the citizens of the Eastern District buy and sell stocks just as the citizens of Dallas County. The Court finds that the citizens of the Eastern District have a substantial interest in correcting any wrongdoing on the part of companies who trade stocks on a national basis.

### 7. Time, cost, and ease in conducting the trial

Defendants argue that the time, cost, and ease in conducting the trial favor transfer to the Northern District. Looking at the Defendants' arguments as to this "catch-all" factor, the Court finds that it has adequately addressed the concerns presented with the above analysis. Accordingly, this factor does not favor transfer. In addition, the delay and prejudice which would result if a transfer was granted weighs against transferring the case. As such, Defendants fail to overcome their burden to disturb the Plaintiffs' choice of forum. Accordingly, Defendants' motion to transfer is denied.

### III. CONCLUSION

Having considered the Defendants' Motions to Dismiss for Improper Venue and Alternative Motion to Transfer Venue (Doc. # 19), the Responses of the Plaintiffs, the arguments put forth in hearing, and having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised, it is hereby

ORDERED, ADJUDGED, and DECREED that the Defendants' Motion to Dismiss for Improper Venue and Alternative Motion to Transfer Venue (Doc. # 19) is DENIED.[2]

**2.** As stated above, this Order applies to all of the Defendants' motions to dismiss and transfer venue filed in all of the above-numbered cases prior to consolidation. Therefore, the following motions are denied: 5:98CV263— Doc. # 17; 5:98CV275—Doc. # 13; 5:98CV279—Doc. # 12; 5:98CV281—Doc. # 13; 5:98CV285—Doc. # 12; and 5:98CV307—Doc. # 11.