**Z–TEL COMMUNICATIONS, INC. Plaintiff**

v.

**SBC COMMUNICATIONS, INC, Ameritech Corporation, Pacific Telesis Group, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, the Ohio Bell Telephone Company, Pacific Bell Telephone Company, Wisconsin Bell, Inc., and Southwestern Bell Telephone, L.P., Defendants.**

No. 5:03–CV–229.

United States District Court,
E.D. Texas,
Texarkana Division.

Aug. 6, 2004.

Neil M Gorsuch, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Martin E Grambow, SBC Telecommunications, San Antonio, TX, for SBC Communications Inc, Defendant.

Mark C Hansen, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Michael K Kellogg, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Sharad S Khandelwal, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Nicholas H. Patton, Robert William Schroeder, III, Patton, Tidwell & Schroeder, Texarkana, TX, Layne E. Kruse, William R. Pakalka, David J. Van Susteren, Darryl W. Anderson, Fulbright & Jaworski, Houston, TX, Christopher V. Goodpastor, Chief Legal Counsel, Z-Tel Communications, Inc., Tampa, FL, for Plaintiff.

Eugene M Paige, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, SBC Communications Inc, Defendants.

William Robert Pakalka, Fulbright & Jaworski, Houston, TX, for Z-Tel Communications Inc, Plaintiff.

Aaron M Panner, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Nicholas H Patton, Patton & Tidwell, Texarkana, TX, for Z-Tel Communications Inc, Plaintiff.

John Michael Pickett, Young Pickett & Lee, Texarkana, TX, for SBC Communications Inc, Defendant.

Robert William Schroeder, III, Patton, Tidwell & Schroeder, Texarkana, TX, for Z-Tel Communications Inc, Plaintiff.

William M Schur, SBC Communications Inc—San Antonio, San Antonio, TX, for SBC Communications Inc, Defendant.

Colin S Stretch, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Ameritech Corporation, Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, Pacific Bell Telephone Company, Pacific Telesis Group, SBC Communications Inc, Southwestern Bell

Telephone LP, The Ohio Bell Telephone Company, Wisconsin Bell Inc, Defendants.

Damon Michael Young, Young Pickett & Lee, Texarkana, TX, for SBC Communications Inc, Defendant.

## ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE

FOLSOM, District Judge.

Before the Court is Defendants' Motion to Transfer Venue. (Doc. No. 5). After considering the Motion, the subsequent briefing thereto, and the applicable law, Defendants' Motion to Transfer Venue is **DENIED.**

## I. INTRODUCTION

Z–TEL (hereinafter, "Plaintiff") is a Delaware corporation with its principal place of business in Tampa, Florida. Plaintiff is a competitive local exchange carrier ("CLEC") engaged in the business of re-packaging and reselling telecommunications services provided by incumbent local exchange carriers ("ILECs"). In addition to its Tampa office, Plaintiff has engineering and operations facilities in Atlanta, Georgia and a consumer services division in Atmore, Florida. Plaintiff offers services throughout the United States. SBC Communications, Inc. (hereinafter, collectively referred to with its co-defendant subsidiaries as "Defendant" or "Defendants") is a Delaware corporation with its principal place of business in San Antonio, Texas.

Defendant seeks a transfer of this case from its current setting in the Texarkana Division to the San Antonio Division of the Western District of Texas. Defendant maintains that the Eastern District of Texas has no connection to the facts at issue in this case, while the San Antonio Division of the Western District of Texas is intimately connected. In response, Plaintiff details specific acts on the part of both Plaintiff and Defendant occurring in the Eastern District of Texas which are typical of, and essential to, both parties' ordinary business operations. In addition, Plaintiff offers evidence that much of the alleged anticompetitive conduct at issue in this case was, and is, directed to and impacts consumers in the Eastern District of Texas.

## II. LEGAL STANDARDS GOVERNING 1404(a) MOTIONS TO TRANSFER VENUE

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under section 1404, the defendant bears the burden of demonstrating to the Court that it should, in its sound discretion, decide to transfer the case. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (holding that the decision to transfer rests within the sound discretion of the court); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) (holding that the defendant bears the burden of demonstrating that the action should be transferred). In determining whether to grant a motion to transfer under section 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. *See Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir.1963) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *In re Triton Ltd. Sec. Lit.*, 70 F.Supp.2d 678, 688 (E.D.Tex.1999); *Robertson v. Kiamichi RR Co.*, 42 F.Supp.2d 651, 655 (E.D.Tex.1999).

The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience

and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The party moving for the transfer bears the burden of demonstrating why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). "[B]efore this Court can order a [convenience] transfer, the defendants must carry a strong burden to prove that [the convenience] factors clearly favor such a change." *In re Triton Ltd. Secs. Litig.,* 70 F.Supp.2d 678, 688 (E.D.Tex. 1999) (quoting *TV–3, Inc. v. Royal Ins. Co. of America,* 28 F.Supp.2d 407, 411 (E.D.Tex.1998)). A defendant must properly establish relevant venue facts by affidavit, deposition, or otherwise as opposed to making unsupported assertions. *In re Triton,* 70 F.Supp.2d at 688. The decision whether to transfer an action under § 1404(a) is within the sound discretion of the district court. *Id.*

■■ The court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3847 at 370 (1986); *See Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989), *cert. denied,* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). Specific criteria to be considered when determining whether to grant a motion to transfer under § 1404(a) include those factors relating to the convenience of the parties: 1) the plaintiff's choice of forum; 2) the relative ease of access to the sources of proof; 3) the cost of obtaining attendance of witnesses and other trial expenses; 4) the place of the alleged wrong; and 5) the possibility of delay and prejudice if granted. *Mortensen v. Maxwell House Coffee Co.,* 879 F.Supp. 54, 56 (E.D.Tex.1995) (cit-

ing *Walter Fuller Aircraft Sales v. Republic of Philippines,* 965 F.2d 1375, 1389 (5th Cir.1992)). Additionally, the court should consider the public interest factors of: 1) the relative backlog and other administrative difficulties in the two jurisdictions; 2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; 3) the local interest in adjudicating local disputes; and 4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

### III.  ANALYSIS

#### A.  Introduction

The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.,* 358 F.3d 337, 340 (5th Cir.2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir.1986)). In Part B, the Court will analyze factors relating to the convenience, or inconvenience, as the case may be, to the relevant parties. In Part C, the Court will turn to factors relating to the public interest.

#### B.  Factors Relating to the Convenience of the Parties

##### 1.  Plaintiff's Choice of Forum

##### a.  Plaintiff's Choice "Should Rarely Be Disturbed"

##### i.  Legal Standards

A plaintiff's right to choose a forum is "well-established," and the choice is usually highly esteemed. *In re Triton,* 70 F.Supp.2d at 688 (quoting *Texas Instruments, Inc. v. Micron Semiconductor,* 815 F.Supp. 994, 996 (E.D.Tex.1993)). In *Gulf Oil Corp. v. Gilbert,* the Supreme Court explained:

It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

In *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, the Court quoted the Supreme Court's *Gilbert* opinion for its language on a plaintiff's choice of forum:

Once the Court has determined that an adequate, available forum exists, the next step is to proceed to a balancing of the public and private interest factors, bearing always in mind that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'

796 F.2d 821, 828 (5th Cir.1986) (*quoting Gilbert*).

### ii. At A Minimum, Plaintiff's Choice of Venue Militates Against Transfer

 Defendant declares, "Z–TEL, a Florida company, has come to this state in search of a forum that it hopes will be favorable." (Doc. No. 27, p. 1). While it seems quite logical that a plaintiff would hope for favorable outcome for its lawsuit, the motive of such plaintiff in choosing a particular forum is ordinarily of no moment: "a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor." *In re Triton*, 70 F.Supp.2d at 689 (*citing McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir.1983)).

Relatedly, Defendant's protestation that Plaintiff does not reside in the Eastern District of Texas does not usefully inform the Court's analysis. Neither 1) the Clayton Act nor 2) 28 U.S.C. 1404(a) directs a court to consider a plaintiff's residence in determining a motion to transfer venue. The Plaintiff has chosen the Texarkana Division of the Eastern District of Texas as the forum in which it wishes to pursue its lawsuit. At a minimum, this choice is a factor which weighs against transfer. Additionally, the Court is inclined to at least give some deference to this choice, especially in light of the fact that § 12 of the Clayton Act allows a federal antitrust suit to be commenced "not only in the judicial district whereof [defendant] is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22.

### b. Defendant Misreads *In re Horseshoe Entm't*

Both sides devote considerable portions of their briefing to the recent Fifth Circuit case *In re Horseshoe Entm't*, 337 F.3d 429 (5th Cir.2003). In the portion of its Motion entitled, "Plaintiff's Choice of Forum," Defendant states:

Z–TEL's pleading makes clear that the anticompetitive scheme alleged in the complaint was, if at all, planned and orchestrated from San Antonio by the parents company defendant, SBC. Under such circumstances, the plaintiff's choice of forum is entitled to no weight. *See, e.g., In re Horseshoe*, 337 F.3d at 434 (reversing district court, holding that it 'erred' in giving too much weight to plaintiff's choice of forum where plaintiff had no connection to the forum and alleged unlawful practices conceived and carried out elsewhere).

(Doc. No. 5, p. 6).

As an initial matter, the Court notes that it will address the planning and orch-

estration of the "anticompetitive scheme alleged in the complaint" in the portion of this Order concerning the place of the alleged wrong. (*See* Part III, B. 4, *infra*). However, Defendant's reliance on *In re Horseshoe* is misplaced and must be addressed at present.

*In re Horseshoe* does not conclude that a plaintiff's choice of forum is entitled to no weight. To the exact opposite, in the part of the case to which Defendant pinpoint cites, the Court wrote:

> [W]e believe the Middle District Court erred in attributing decisive weight to the plaintiff's choice of forum. We believe that it is clear under Fifth Circuit precedent that the plaintiff's choice is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative.

337 F.3d 429, 434 (emphasis added).

It seems that the portion of Defendant's brief quoted immediately above was directed at the sentence in *In re Horseshoe* immediately following the two sentences quoted above, "[o]bviously, to be considered at all, the plaintiff's choice of forum must be one which is permitted under the relevant venue statute." *Id.*

Defendant confuses two different situations. A judicial determination of 1) improper venue is quite different from 2) a judicial determination that a plaintiff's choice of a proper venue should be afforded minimal significance. In *In re Horseshoe*, the Court addressed the former point. By contrast, the law is decidedly opposite concerning the latter.

### c. Conclusion

■ The bottom line is that Plaintiff's choice of forum weighs in its favor. While Defendant misreads *In re Horseshoe*, in other parts of its briefing it does not seem to disagree with this statement of the law. (*See, e.g.*, Doc. No. 27, p. 2) ("Z–Tel's response relies on nothing more than the presumption in favor of a plaintiff's choice of forum."). Rather, Defendant's strongest line of attack trains on factors which it contends point in a different direction.

### 2. Witness Convenience

#### a. Legal Standards

Defendant cites Professor Charles Alan Wright's treatise for the proposition that the single most important factor in passing on a motion to transfer is the "convenience of witnesses." (Doc. No. 5, p. 6). This statement is only partially correct. "[I]t is the convenience of the non-party witnesses that is accorded the greatest weight." *Minka Lighting v. Trans Globe Imps.*, 2003 WL 21251684, *2 (N.D.Tex.2003), 2003 U.S. Dist. LEXIS 8862, *10. Defendant also makes reference to *Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994). (Doc. No. 5, p. 6). Similarly, *Gundle* does not perfectly correlate with the proposition for which Defendant cites it. 844 F.Supp., at 1166 ("It is the convenience of non-party witnesses, rather than employee witnesses, however, that is the most important factor and accorded greater weight.").

This is because when "the key witnesses are ... employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D.Tex. 1992); *see also Mannatech Inc. v. See*, 2000 WL 256326 (N.D.Tex.2000), 2000 U.S. Dist. LEXIS 2656 (finding that defendants can compel their employees to testify in another district).

#### b. Defendant's Argument Focuses on Many Witnesses Who Are Not Non–Parties

Defendant identifies six (6) employee witnesses who would suffer inconvenience

if required to travel Texarkana. (Doc. No. 5, Ex. A, "Fetterman Decl."). Three of these witnesses, Scott Perkins, Monica Kosterlitzky, and Laura Hernandez work in Defendant's advertising or communications divisions. A fourth employee witness, Louis Fuentes, is the Associate Director of Consumer Customer Reporting. The fifth and six witnesses, Sam Maropis and Kevin Ryan, have the title "Associate Director." Defendant does not reveal the name of the group or division in which these two employee witnesses are Associate Directors.

### c. Defendant's Identification of Non–Party Witnesses Progresses From Generality in the Plural to Vagueness in the Singular

Mr. Fetterman declares, "we have begun to identify a number of non-party witnesses who are likely to have information relevant to this litigation." (Doc. No. 5, Ex. A., "Fetterman Decl.") (emphasis added). The next sentence begins, "[s]everal reside in the Western District…" *Id.* (emphasis added). Defendant then identifies two witnesses who are no longer in Defendant's employ, Sandy Wagner and Jerry Gordon.

The Court is left to wonder how many non-party witnesses who are part of "a number" are located in proximities closer to Texarkana than San Antonio. Similarly, the Court is left to wonder how many non-party witnesses among this "several" reside outside of the Western District.

### d. Defendant's Pleading Fails to Rise Above the Vaguest Level of Generality in Terms of its Description of The Witness' Anticipated Testimony

As the party seeking transfer, Defendant must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover. *Fletcher v. Southern Pacific Transp. Co.,* 648 F.Supp. 1400, 1402 (E.D.Tex. 1986); *Gajeske v. Wal–Mart Stores, Inc.,* 2000 WL 34401691, *5 (E.D.Tex.2000), 2000 U.S. Dist. LEXIS 6101, *15 (*citing Fletcher*). Defendant offers virtually no detail as to the nature of anticipated testimony expected to be offered by the six party witnesses. Defendant offers a terse description of the expected testimony expected to be offered by the two non-party witnesses. However, the Court reiterates that Defendant has indicated that Wagner and Gordon are only two members of a much larger grouping. Obviously, Defendant offers no description of the testimony expected to be offered by the remaining members of this nebulous group of nonparty witnesses. The bottom line is that a flat assertion that these witnesses might potentially offer information germane to the facts at issue does not help the Court determine if attendance at trial will be likely such that the inconvenience associated with their travel to Texarkana weighs heavily in the analysis.

### e. A Countervailing Legal Force: Additional Distance Means Additional Travel Time

The issue of travel mileage from the city of San Antonio also arose in *In re Volkswagen AG.* In that case, the Fifth Circuit explained:

The distance traveling by car between Marshall, Texas, and San Antonio, Texas, is approximately 390–400 miles. When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel

time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour. See FED. R. CIV. P. 45(c)(1).

371 F.3d 201, 204–05 (5th Cir.2004).

This language clearly militates in favor of Defendant's position. One of the seminal teachings of *Volkswagen* is that district courts must conduct their venue transfer analyses while always bearing in mind the real economic burden placed on non-resident defendants. This Court proceeds with that thought in mind. However, *Volkswagen* did not teach that additional distances and travel time are the end of the story.

The Fifth Circuit has held that a travel distance of two hundred miles did not warrant transfer. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("This case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States. The minor inconvenience Exxon may suffer in having to litigate this case in Tyler—only 203 miles distant—rather than in Houston, can in no rational way support the notion of abuse of discretion."); *see also Langton v. Cbeyond Commun., L.L.C.*, 282 F.Supp.2d 504, 510 (E.D.Tex. 2003) (Davis, J.) (citing *Jarvis Christian*). Texarkana is approximately four-hundred (400) miles from San Antonio. This distance is approximately equal to that which was at issue in *Volkswagen*. Indeed, this distance is twice as much as the distance at issue in *Jarvis Christian*. While the difference is significant, the Court does not assign it the dispositive weight Defendant urges. The reasons on which the Court rests this conclusion are explained immediately below.

### f. Insufficient Detailing of Certain "Regular Work or Home Responsibilities"

In *Volkswagen*, the Court explained, "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult . . ." 371 F.3d 201, at 205.

Wagner and Gordon declare in identical language, "I would be inconvenienced if called on to testify as a witness in Texarkana, Texas." (Doc. No. 5, Ex. A, Attachments 1 and 2). These witnesses do not explain the nature of such inconvenience. The Court is left to wonder if, for example, these potential witnesses suffer health problems which make travel difficult or if they are responsible for the care of minor children or elderly parents. There is no doubt that litigation taxes the resources of defendant companies. This reality is an unfortunate, but ineluctable, byproduct of the civil justice system. In *Volkswagen*, the Fifth Circuit was clear that district courts should not impose this burden lightly. This Court would not think otherwise. However, Defendant has failed to sufficiently separate the inconvenience specific to "work and home responsibilities" from general inconvenience intrinsic to litigation.

### g. Air Travel

In *Volkswagen*, the Court spoke about the lack of direct flights to Marshall.

[T]here are no direct flights between San Antonio and Marshall. The city nearest to Marshall for purposes of trav-

eling from San Antonio is Shreveport, Louisiana. There is, however, no direct service between San Antonio and Shreveport, thereby requiring passengers to make a stop either in Dallas/Fort Worth or Houston, which comprises a total air travel time of at least two and a half hours, in addition to the 40 mile drive from Shreveport to Marshall.

371 F.3d, at 204 n. 3.

This Court notes that, unlike the city of Marshall, the city of Texarkana is accessible via airplane. Six direct flights originate each day from Bush Intercontinental in Houston (Continental Airlines) and DFW in Ft. Worth (American Eagle). The flight from Dallas is less than thirty (30) minutes; the flight from Houston is less than one hour in duration. Moreover, multiple flights to Houston and Ft. Worth depart daily from the city of San Antonio.

### h. Conclusion

Defendant offers six (6) party witnesses and two (2) non-party witnesses who are former employees of Defendant. A description of the expected testimony is forthcoming only for the two former employees. Defendant does not detail how many non-party witnesses in some larger group it expects to call. Defendant's vague description of the witness' potential testimony does not help the Court determine which witnesses should receive attention as to possible burdens in traveling to Texarkana. Moreover, the two non-party witnesses offer no explanation of how they will be inconvenienced by traveling to Texarkana. Lastly, doctrine supports the proposition that travel to Texarkana from San Antonio is not unduly burdensome. For these reasons, transfer is not warranted on this point.

### 3. The Accessibility and Location of Sources of Proof

Defendant declares, "[g]iven the location of likely witnesses and source of documentary proof described above, it would cost less to hold any trial in the Western District." (Doc. No. 5, p. 8). As this Court has stated previously, when documents can be easily copied and shipped to the Eastern District, the Court does not consider their present location "an important factor in the transfer analysis." *In re Triton,* 70 F.Supp.2d at 690; *see also Arrow Elec., Inc. v. Ducommun, Inc.,* 724 F.Supp. 264, 266 (S.D.N.Y.1989) (denying transfer into district where defendant's documents were located because doing so would merely shift the transportation burden from the defendant to the plaintiff).

In *In re Horseshoe,* the Court held that a refusal to consider the location of records was improper. 305 F.3d 354, 358 (5th Cir.2003). However, the ruling in that case was animated by the presence of the special venue statute:

> When the filing of a claim is covered by a special venue statute, as in this case, we think the venue factors set forth in that special statute are the clearest indicators of where Congress considered the best place to try an employment discrimination case. In this case those special venue factors clearly indicate that Congress thought employment discrimination controversies should be litigated in judicial districts that had direct and immediate connection with the parties, the events and the evidence bearing on their controversy. For these reasons we cannot accept the Middle District Court's interpretation of the statutory language which would support venue in the Middle District of Louisiana.

*Id.* at 359.

This Court is not refusing to consider the location of evidence. To the contrary,

the Court feels that this is an important factor and has given it much thought. After such consideration, the Court concludes that Defendant has not carried its burden to show why the location of documents outside of Texarkana works a substantial hardship.

Finally, Defendant offers no evidence in support of its assertion that a defendant in a different antitrust case, *Bell Atlantic,* produced approximately five million documents at a cost of millions of dollars. (Doc. No. 5, p. 8). Even assuming that this number is accurate and that a similar magnitude of document production and associated expenses would occur in this case, it does not follow that these expenses will be significantly less if the case is tried in San Antonio. This is because the cost of locating and producing relevant discovery documents is totally independent from the cost of transporting such documents after the production has occurred. The marginal costs of document transportation, rather than fixed costs of document production, are the focus of the Court's analysis. For these reasons, Defendant does not carry its burden on this point.

### 4. Place of the Alleged Wrong

#### a. Defendant's Argument

The crux of Defendant's argument is if the policy and decisions directly responsible for the anticompetitive conduct at issue was coordinated in San Antonio, then San Antonio is the place of the alleged wrong. (Doc. No. 5, p. 9).

#### b. Plaintiff's Arguments

##### i. Multiple and Dispersed Instances of Harm–Triggering Conduct

Plaintiff's first argument is that the anticompetitive conduct at issue has occurred in multiple parts of Defendant's twelve state incumbent operating territory. "In every state in the SBC Region, SBC has used its monopoly control over the local network to erect roadblocks to competition." (Doc. No. 1, p. 17). Plaintiff's baseline complaint is that Defendant has denied Plaintiff (and other competitors) access to the Advanced Intelligent Network ("AIN"). "To compete in the enhanced services market, Z–TEL needs to interconnect its software databases and network with SBC's AIN facilities, including SBC's AIN and signaling databases." *Id.* at 16. Defendant's networks reach the far-flung places served thereby. Three tandem switches, often used as a junction or aggregation point to pass traffic to CLECs, long distance, and wire carriers, are physically located in the Eastern District of Texas. (Doc. No. 21, Reith Aff., ¶ 13).

Related to Plaintiff's first argument is its assertion that in November 2000, a meeting was held in Defendant's Dallas offices in which Defendant informed Plaintiff that it would refuse to permit competitors to use unbundled network elements to provide intraLATA toll calls to end users throughout its region, except in Texas. (Doc. No. 21, p. 8, n. 4). Defendant replies that the Dallas meeting is irrelevant to its transfer request to the Western District of Texas since Dallas is obviously in the Northern District of Texas. (Doc. No. 27, p. 6) ("[T]he new allegedly relevant location is Dallas, in the Northern District of Texas, as if that is where Z–TEL brought suit."). Defendant's Reply objection is somewhat undermined when the Dallas meeting is categorized as but one single point on the line of reasoning (multi-point instances of harm-triggering conduct) which forms Plaintiff's first argument.

##### ii. Residents of the Eastern District of Texas Have Felt the Effects of the Alleged Anticompetitive Conduct

Plaintiff's second argument is that the effect of the alleged anticompetitive con-

duct have been felt by residents of the Eastern District of Texas who are also purchasers of Plaintiff and Defendant's telecommunication products.

### iii. Disparaging Communication Has Been Directed to Consumers in the Eastern District of Texas

Plaintiff's third argument is that Defendant's wrongful advertisements defaming and disparaging Plaintiff and other competitive carriers have been broadcast to consumers through Defendant's entire business operating area, which includes the Eastern District of Texas.

### c. Analysis

### i. The Law Focuses on the Effects, Rather Than the Location, of Alleged Harm–Triggering Conduct

■ Defendant's argument will prevail only if the law focuses on the location of harm-triggering conduct as opposed to the effects of such conduct. The law does not adopt Defendant's view. In *Continental Airlines, Inc. v. American Airlines, Inc.*, the Court explained:

> First, the Court disagrees with Defendants' contention that this case has nothing to do with the residents of the Galveston Division. In this case, Plaintiffs have alleged that Defendants engaged in certain activities in violation of the antitrust laws: to the extent that residents of the Galveston Division suffered from these actions (if they in fact took place), it cannot be said that they have no interest in the outcome of this litigation.

805 F.Supp. 1392, 1399 (S.D.Tex.1992).

For this reason, Defendant fails to carry its burden on this point.

### ii. Texarkana's Local Service Provider, Valor Telecom, is a Customer of Defendant's

There is also a conspicuously local ingredient in this case. Plaintiff alleges that Defendant offers network access to Valor Telecom, the local service provider in Texarkana. (Doc. No. 37, p. 6). It follows that the residents of Texarkana are not divorced from the ambient market dynamics at issue in this lawsuit.

### 5. Possibility of Delay and Prejudice if Transfer is Granted

Defendant directs the Court's attention to language in *In re Horseshoe Entm't* that in rare and special circumstances a transfer is permissible upon a showing delay and prejudice. (Doc. No. 5, p. 9). Read in context, *In re Horseshoe* the Court was unambiguous, "[w]e recognize that in rare and special circumstances a factor of 'delay' or of 'prejudice might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." *Id.* The requirement of "clear and convincing evidence" qualifies the "rare and special circumstances" such that this element is rarely a significant factor in a transfer analysis. The requisite rare and special circumstances would be present if, for example, a party requested transfer on the eve of trial. That type of situation is not at issue.

Moreover, it is hard to imagine a situation where a case would not be delayed (to a greater or lesser degree) if transferred. The transferee court could hardly be expected to drop everything else on its docket and start where the transferor court left off. In addition, Defendant should consider the sentence in *In re Horseshoe* immediately following the sentence it cites, "No such evidence exists here in this case and we think the Middle District Court erred by considering and giving weight to the mere 'possibility' of vague and indefinite circumstances." 337 F.3d, at 434. The bottom line is that "delay" is rarely an issue of importance in a transfer analysis because such dilation must be "undue" rather than absolute.

To avoid this mistake, the Court now considers whether the evidence offered establishes that any party would suffer delay or prejudice should transfer be granted. The party moving for the transfer bears the burden of demonstrating why the forum should be changed. *See, e.g., Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966). Defendant readily admits that trial time is shorter in the Eastern District of Texas. This concession seems to suggest that Defendant has not met its burden on this point. Accordingly, this factor does not weigh in favor of transfer.

### C. Factors Relating to the Convenience of the Public

The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). Defendant only offers arguments on the local interests in adjudicating local disputes and conflict of laws.

The crux of Defendant's local interest argument is that the citizens of San Antonio have a greater interest in determining whether or not the alleged wrongdoing took place. The Court finds, however, that the citizens of the Eastern District buy telecommunications services just as do citizens of the Western District of Texas. Furthermore, the Court finds that the citizens of the Eastern District have a substantial interest in correcting any wrongdoing related to competition in this industry.

Defendant flatly declares that no conflicts problem arises in relation to this requested transfer. Plaintiff does not address this point in its Reply or Sur–Reply.

For these reasons, Defendant has failed to carry its burden with regard to the Public Convenience factors.

### IV. CONCLUSION

Plaintiff's choice of forum is highly esteemed. Defendant has failed to tip the balance in its favor on any of the private interest factors. In addition, the telecommunication services at issue in this lawsuit swim in a stream of commerce flowing through the Eastern District of Texas. There is, therefore, a strong local interest in the resolution of this case. Defendant has failed to carry its burden that the balance of public interest factors favors a transfer to the Western District of Texas.

Carefully considering all of the relevant factors, the Court concludes that Defendant has not carried its heavy burden of showing the interest of justice and the convenience of the witnesses and parties will be better served by transferring this action to Western District of Texas, San Antonio Division. Accordingly, the Court is of the opinion that Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be **DENIED.**